1STEVEN R. PLOTKIN, Judge.
This appeal raises the complex question of whether the defendant, State of Louisiana, through Department of Transportation and Development (“DOTD”), was deprived of a fair opportunity to present a decisive defense as a result of the legal procedures used by the plaintiff, Vickie Hernandez. DOTD appeals a trial court judgment awarding Ms. Hernandez $375,000 plus legal interest and costs, for damages arising from the death of her natural mother, Barbara Hendley, resulting from a motor vehicle accident that occurred on Bayou Road in St. Bernard Parish. Finding that the Declaratory Judgment that was used in the instant case to defeat the DOTD’s exception of no right of action to Ms. Hernandez’s wrongful death action was an absolute nullity, we reverse the trial court judgment denying the exception, grant the exception, and dismiss Ms. Hernandez’s wrongful death action.
Another issue concerns whether the $125,000 damages awarded to each of the plaintiffs, Jude and Arthur Bailey, for minor injuries was excessive. For the reasons that follow, we amend the trial court judgment in favor of Jude and Arthur Bailey, reducing the trial court’s general damage award to Jude Bailey to $22,500, and reducing the trial court’s general dam *812 age award to Arthur Bailey to $25,000. |2In all other respects the trial court judgment in favor of Jude and Arthur Bailey is affirmed.
FACTS AND PROCEDURAL HISTORY
The accident in question occurred at approximately 1:30 a.m. on February 11, 1998, when the Honda Civic automobile driven by Ms. Hendley crossed the center line on Bayou Road[1] in St. Bernard Parish, colliding head-on with the pick-up truck being driven by Jude Bailey, in which Arthur Bailey was riding as a passenger. As a result of the collision, Ms. Hendley suffered injuries that resulted in her death shortly thereafter. Both Jude and Arthur Bailey, who were brothers, were hospitalized overnight with various minor injuries.
On April 21, 1998, Ms. Hernandez, Ms. Hendley’s natural child, filed a wrongful death action against the DOTD, asserting that the cause of the accident was the condition of Bayou Road at the site of the accident. On February 11, 1999, Jude and Arthur Bailey filed a separate suit against DOTD for personal injuries arising out of the accident. On June 16,1999, the DOTD filed a Motion to Recuse Judge Pro Tem-pore J. Wayne Mumphrey of the 34th Judicial District Court, to whom the case had been allotted, alleging Judge Mumphrey’s involvement as plaintiffs counsel in another case involving a vehicular accident on Bayou Road, which made him “biased, prejudiced, or interested in the cause or outcome” of this case. La. C.C.P. art. 151(B)(5). On June 21, 1999, Judge Mum-phrey referred the Motion to Recuse to Judge Kirk A. Vaughn, another 34th Judicial District Court judge, pursuant to La. C.C.P. art. 155. Although the record does not contain a judgment on the DOTD’s Motion to Recuse, it does contain an order signed by | ¡¡Judge Vaughn and dated June 28, 1999, granting the DOTD’s motion to file an application for supervisory writs in this court, presumably seeking review of his denial of the DOTD’s Motion to Re-cuse.
On June 24, 1999, Jude and Arthur Bailey filed a Motion to Consolidate their personal injury action with Ms. Hernandez’s wrongful death action. Judge Mum-phrey granted the Motion to Consolidate on June 28, 1999, the day the original trial commenced. The next day, June 29, 1999, this court denied the DOTD’s Motion to Recuse, finding no error in Judge Vaughn’s denial of the motion. On July 1, 1999 the DOTD filed a Second Motion to Recuse, seeking referral of the motion to yet a different judge for hearing, and citing additional pending cases involving Bayou Road in which Judge Mumphrey was counsel of record. On the same day, Judge Mumphrey denied the DOTD’s request that he refer the Second Motion to Recuse to another 34th Judicial District Court judge. The DOTD again sought supervisory writs.
Following three days of the merits trial, on July 2, 1999, the Louisiana Supreme Court granted the DOTD’s first Motion to Recuse, declared a mistrial in the case, and ordered that the case be re-allotted to another division of court. On the same day, Judge Mumphrey signed an order to reallot the case. However, on January 5, 2000, following the election of a new judge in the section where Judge Mumphrey was serving as pro tempore judge, the case was returned to the division to which it was originally allotted, to be tried by newly-elected Judge Wayne G. Cresap.
The second trial in the consolidated matter was held on July 17, 18, and 26, 2001. *813 On July 27, 2001, the trial court issued its written judgment against DOTD, Land in favor of Ms. Hernandez and Jude and Arthur Bailey. The DOTD appeals the judgment, assigning a number of errors, as further explained below.
MS. HERNANDEZ’S RIGHT TO BRING WRONGFUL DEATH ACTION
The record evidence, including Ms. Hernandez’s deposition testimony, indicates that Ms. Hernandez (who was then Vickie Lynn Chalaire) was reared by her great aunt, Marie Sorci, from the time she was two years old until she became an adult, and that Ms. Hernandez had little contact with Ms. Hendley, her natural mother, for much of her formative years. Further, the record indicates that on August 21, 1985, Ms. Hernandez’s eighteenth birthday, Ms. Sorci and Ms. Hernandez executed a Notarial Act, whereby Ms. Sorci adopted Ms. Hernandez “to have all the rights of an adopted child and forced heir as provided by the laws of the State of Louisiana.”
On the day the original trial commenced, June 28, 1999, subsequent to Ms. Hernandez’s deposition testimony concerning her adoption, DOTD filed a peremptory exception of no right of action[2] to the wrongful death suit filed by Ms. Hernandez, citing Ms. Hernandez’s deposition testimony that she had been adopted by her great aunt. In support of its peremptory exception, the DOTD cited the consistent fine of Louisiana cases holding that children given in adoption are not included in the classes of persons entitled to bring a wrongful death action enumerated in La. C.C. art. 2815.2. See Nelson v. Burkeen Construction Co., 605 So.2d 681 (La.App. 2 Cir.1992), citing Haas v. Baton Rouge General Hospital, 364 So.2d 944 (La.1978); Simmons v. Brooks, 342 So.2d 236 (La.App. 4 Cir.1977); and Domingue v. Carencro Nursing Home, Inc., 520 So.2d 996 (La.App. 3 Cir.1987), writ denied, 522 So.2d 565 (La.1988).
Faced with the DOTD’s peremptory exception of no right of action, on September 1, 2000, Ms. Hernandez filed a Petition to Revoke, Rescind, and Declare Statutory Adoption Invalid, asserting that she was not advised at the time of her adoption that the adoption would affect her relationship with her natural mother. On February 12, 2001, Judge Cresap signed ex parte a Declaratory Judgment that Ms. Hernandez’s adoption was “invalid, null, void, and without effect as though it had never been executed.”
On June 28, 2001, just prior to the second trial, Ms. Hernandez filed both an exception and an opposition to the DOTD’s peremptory exception of no right of action, attaching a copy of the Declaratory Judgment nullifying her adoption and characterizing the DOTD’s exception as an improper collateral attack on a valid judgment. The next day, on June 29, 2001, Judge Cresap denied the DOTD’s peremptory exception of no right of action. After the second trial, on July 23, 2001, the DOTD filed an application for a writ of supervisory review of the judgment denying its exception in this court. On July 25, 2001, this court denied the application for supervisory writs of review, stating as follow: “We decline to exercise our supervisory jurisdiction in this matter. Relator *814 has an adequate remedy on appeal.” Thus, as a preliminary matter, this court must determine whether the trial court properly denied the DOTD’s peremptory exception of no right of action.[3]
|fiThe gravamen of Ms. Hernandez’s arguments against DOTD’s peremptory exception of no right of action is that the Declaratory Judgment whereby her adoption was nullified is now a final, valid judgment that removes the basis of the DOTD’s exception. Further arguing that the time to appeal the Declaratory Judgment nullifying her adoption has passed, Ms. Hernandez asserts that the DOTD’s peremptory exception represents an improper attempt to collaterally attack her final, valid Declaratory Judgment. She also argues that this court has no jurisdiction to consider the validity of her Declaratory Judgment because the DOTD failed to formally appeal the Declaratory Judgment to this court within the applicable time delays or take other appropriate, timely action to challenge the Declaratory Judgment.
We find, however, that Ms. Hernandez’s arguments are specious, for a number of reasons. First, we note that that the DOTD’s exception was actually filed some 5 months prior to the filing of Ms. Hernandez’s Petition to Revoke and some 21 months prior to the issuance of the Declaratory Judgment that she now claims prevents the DOTD from asserting the peremptory exception. Thus, Ms. Hernandez’s arguments that the DOTD’s filing of the peremptory exception represented an improper collateral attack on a final, valid judgment have no merit. It is axiomatic that the filing of the DOTD’s exception cannot be considered as a collateral attack on a judgnent that did not exist at the time the exception was filed. In fact, the DOTD’s peremptory exception of no right of action was properly filed when the DOTD became aware of the factual circumstances allegedly barring |7Ms. Hernandez’s legal right to bring a wrongful death action for the death of her natural mother, Ms. Hendley.
Second, we note that Ms. Hernandez’s decision to file her Petition to Revoke, Rescind, and Declare Statutory Adoption Invalid was obviously provoked by the DOTD’s filing of its peremptory exception of no right of action. The Notarial Act whereby Ms. Sorci adopted Ms. Hernandez was executed by both Ms. Sorci and Ms. Hernandez on August 21, 1985, yet she never attempted to nullify the adoption until some fifteen-plus years later when she filed her Petition to Revoke on September 1, 2000, after the DOTD sought dismissal of her wrongful death action in this case. Thus, Ms. Hernandez is attempting to defeat the DOTD’s peremptory exception of no right of action by invoking a Declaratory Judgment that was issued in response to her petition that was clearly filed in response to the DOTD’s filing of that exact same peremptory exception.
Third, Ms. Hernandez asserts that this court is precluded from considering the validity of the Declaratory Judgment nullifying her adoption because the DOTD failed to file an appeal of that judgment or otherwise seek review of the judgment in the separate proceeding that resulted in the issuance of the Declaratory Judgment. Essentially, Ms. Hernandez argues that the only way the DOTD could have at *815 tacked the judgment was to be a party to the judgment itself, since only a party to an action can file an appeal or a motion for new trial. This argument is made despite the fact that Ms. Hernandez admits that she failed to name the DOTD as a party to the separate proceeding that resulted in the Declaratory Judgment. Moreover, Ms. Hernandez admits that she failed to notify the DOTD of the existence of the declaratory judgment proceeding either before Judge Cresap issued the Declaratory Judgment or within the applicable appeal delays after the | Sissuance of the Declaratory Judgment. In fact, the first time the Declaratory Judgment is mentioned on the record of this case is when Ms. Hernandez filed her exception and opposition to the DOTD’s peremptory exception of no right of action on June 28, 2001, 18 months after the Declaratory Judgment was issued.
Finally, Ms. Hernandez claims that the judgment has now become final and is therefore no longer subject to any type of collateral attack. Thus, Ms. Hernandez seeks to have this court deny a timely-filed peremptory exception of no right of action on the basis of a Declaratory Judgment obtained after the filing of that exception as a result of a proceeding in which the DOTD was neither named as a party nor notified either of the filing of the proceeding or the signing of the judgment until 18 months after the issuance of the Declaratory Judgment allegedly removing the basis of the peremptory exception. As a corollary to this argument, Ms. Hernandez seeks to limit this court’s jurisdiction to even consider the DOTD’s peremptory exception of no right of action despite this court’s previous statement that the DOTD has an adequate remedy on appeal, thereby specifically preserving this issue for appellate review.
However, Ms. Hernandez’s arguments concerning this court’s lack of jurisdiction to consider the Declaratory Judgment ignore the fact that there are three ways that a final judgment may be challenged: (1) timely application for a new trial, (2) petition for nullity, and (3) timely appeal. Webster v. Boh Bros. Construction Co., Inc., 603 So.2d 761, 763 (La.App. 4 Cir.1992). Of course, the DOTD was precluded from filing either a motion for new trial or an appeal within the appropriate time limitations established by Louisiana Code of Civil Procedure because Ms. Hernandez faded to name the DOTD as a party to the declaratory judgment action or even to notify the DOTD of the existence of the Declaratory | judgment, which she was required to do. The DOTD did not file a formal petition for nullity pursuant to La. C.C.P. art.2001 et seq., choosing instead to rely on this court’s statement in its denial of the DOTD’s application for supervisory writs that it had an adequate remedy on appeal, a right conferred to it by this court.
The section of the Louisiana Code of Civil Procedure governing actions for nullity recognizes two distinct types of null judgments: (1) relatively null judgments, and (2) absolutely null judgments. The procedure for recognition of a relatively null judgment is specifically delineated in La. C.C.P. art.2004, which allows a court in its discretion to annul a judgment obtained by fraud or ill practices provided the following requirements are fulfilled:
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
The DOTD failed to file a petition to annul the Declaratory Judgment within one year of its discovery of the existence of that *816 judgment.[4]
However, the rules governing the nullification of absolutely null judgments are more flexible than those governing relatively null judgments. Absolutely null judgments, which are judgments that are null for vices of form, are defined by La. C.C.P. art.2002 as follows:
A. A final judgment shall be annulled if it is rendered:
(1) Against an incompetent person not represented as required by law;
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken; or
(3) By a court which does not have jurisdiction over the subject matter of the suit.
|inB. Except as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this Article may be brought at any time.
As La. C.C.P. art.2003 only prohibits a defendant who has acquiesced in a judgment from bringing an action for nullity, the exception established by that article does not apply to the instant case.
In contrast to the relative nullity of a judgment, which cannot be collaterally attacked, an absolute nullity “may be asserted by any person with interest in a collateral proceeding at any time and before any court, without resort to an action of nullity.” Gleason v. Palmieri, 97-0624, 97-0625, p. 2 (La.App. 4 Cir. 12/23/97), 707 So.2d 57, 58, quoting Ledford v. Pipes, 507 So.2d 9, 11 (La.App. 2 Cir.1987). See also LaBove v. Theriot 597 So.2d 1007, 1011 (La.1992). Because the DOTD is clearly a “person with interest” in the Declaratory Judgment at issue here, its collateral attack of the judgment in this court is sufficient to give this court jurisdiction to consider whether the Declaratory Judgment is an absolutely null judgment.
Declaratory judgments are governed by La. C.C.P. art. 1871 et seq., which is patterned after the Uniform Declaratory Judgment Act. Under the provisions of La. C.C.P. art. 1871, relative to the scope of declaratory judgments, the declaratory judgment procedure is limited to “cases where it is appropriate.” La. C.C.P. art. 1872 delineates the “interested parties” who “may obtain declaration of rights, status, or other legal relations,” providing as follows:
A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
InUnder the language of the above article, Ms. Hernandez clearly does not expressly qualify as an “interested person” entitled to seek a declaratory judgment to nullify her adoption.
Further, the purpose of the declaratory judgment articles is delineated by La. C.C.P. art. 1874, as follows:
A person interested as or through an executor, administrator, trustee, guard *817 ian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto:
(1) To ascertain any class of creditors, devises, legatees, heirs, next of kin or others;
(2) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or
(3) To determine any question arising in the administration of the State or trust, including questions of construction of wills and other writings.
As revealed by the article quoted above, the purpose for which Ms. Hernandez sought a declaratory judgment — to declare her adoption null and void- — is not expressly recognized by Louisiana as an appropriate purpose for obtaining a declaratory judgment.
However, La. C.C.P. art. 1875 does provide some latitude to judges considering whether to issue declaratory judgments, providing as follows:
The enumeration in Articles 1872 through 1874 does not limit or restrict the exercise of the general powers conferred in Article 1871 in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove uncertainty.
Of course, the Declaratory Judgment entered by Judge Cresap nullifying Ms. Hernandez’s adoption in this case resulted from an ex parte proceeding and neither terminated any controversy nor removed any uncertainty.
| ^Moreover, despite the elasticity that La. C.C.P. art. 1875 adds to Louisiana’s declaratory judgment procedure, following the Uniform Declaratory Judgment Act, Louisiana courts have consistently held that declaratory relief is available only to decide a justiciable controversy, meaning a present “existing actual and substantial dispute,” involving the legal relations of parties with real adverse interests. American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 161 (La.1993); Couvillion v. James Pest Control, Inc., 98-2382, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 172, 174. In the instant case, the trial judge simply granted the Declaratory Judgment nullifying Ms. Hernandez’s adoption in an ex parte proceeding in which the only party was Ms. Hernandez herself; it is axiomatic that a justiciable controversy does not exist unless at least two parties are involved in the proceeding. Thus, it appears that Judge Cresap improperly issued the Declaratory Judgment because none of the prerequisites for entering a declaratory judgment were present.
More important as it concerns the question of the validity of the Declaratory Judgment nullifying Ms. Hernandez’s adoption, the proper parties to a declaratory judgment action are governed by La. C.C.P. art. 1880, which states, in pertinent part, as follows:
When declaratory relief is sought, all persons should be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.
[Emphasis added.] Under the provisions of the above article, “all persons ... who have ... any interest which would be affected by the declaration” are indispensable parties to the declaratory judgment action. [Emphasis added.] Nicholas v. Richardson, 573 So.3d 1317, 1318 (La.App. *818 3d Cir.1991); Blanchard v. Naquin, 428 So.2d 926, 928 (La.App. 1st Cir.), writ denied, 433 So.2d 162 (La.1983). This conclusion is supported by La. C.C.P. art. 641, which defines an indispensable party to a judicial proceeding as a person “whose interests in the subject matter are so interrelated that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.” Thus, when both the existence and the claim of a person who would be affected by a declaratory judgment are evident, that person must be joined in the petition for declaratory judgment. Nicholas, 573 So.2d at 1318, citing Humble Oil & Refining Co. v. Jones, 241 La. 661, 130 So.2d 408 (1961).
A necessary corollary to the rule is that a party’s failure to join an indispensable party to a declaratory judgment action deprives the trial court of subject-matter jurisdiction over that action. In fact, this rule has been expressly recognized by a number of foreign jurisdictions applying the Uniform Declaratory Judgment Act. Pennsylvania courts have consistently held that a failure to join an indispensable party to a declaratory judgment action deprives a court of subject-matter jurisdiction. See Tremco, Inc. v. Pennsylvania Manufacturers’ Insurance Co., 2002 WL 1404767, p. 2 (Pa.Comm.Pl.2002) and cases cited therein. Moreover, Oregon courts have held that the requirement that indispensable parties be named to actions filed under the Declaratory Judgment Act is jurisdictional, meaning that “failure to join an interested party renders any judgment void.” See Fox v. Country Mutual Insurance Co., 169 Or.App. 54, 65, 7 P.3d 677, 684 (2000) and cases cited therein. The Nebraska Supreme Court has also recognized that the presence of necessary parties is jurisdictional in declaratory judgment cases, and that it is a matter that the parties cannot waive. Redick v. Peony Park, 151 Neb. 442, 451, 37 N.W.2d 801, 807 (1949). Because Ms. Hernandez failed to name the | uDOTD, an indispensable party, as a party to the proceeding that resulted in the Declaratory Judgment at issue in the instant case, the trial court lacked subject-matter jurisdiction. Moreover, pursuant to La. C.C.P. art.2002, a judgment issued by a court that lacks subject-matter jurisdiction is absolutely null.
Although no Louisiana court has previously applied the above reasoning to hold that a declaratory judgment entered in the absence of an indispensable party is absolutely null, our decision on this issue is nevertheless consistent with the Louisiana Supreme Court’s most recent statement on the subject. In Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65 (1952), the court annulled and set aside a judgment entered in the absence of a necessary party and remanded the case to allow the necessary party to be named. Id. at 630, 60 So.2d at 68. That procedure was followed most recently in Nicholas, 573 So.2d 1317 (La.App. 3 Cir.1991). However, an important distinction between the instant case and the Horn and Nicholas cases makes remand impossible in the instant case. Those cases involved direct appeals of judgments entered in the absence of required parties. If the Declaratory Judgment itself had been appealed to this court, remand would have been the appropriate remedy. However, the DOTD was unable to appeal the Declaratory Judgment because it was not notified of the existence of the Declaratory Judgment within the appropriate appeal delays. In fact, this court does not have jurisdiction to remand the Declaratory Judgment at issue here for joinder of DOTD because that judgment is not before us on appeal; only the propriety of the denial of DOTD’s peremptory exception of no right of action is before us. Thus, we cite the Horn and *819 Nicholas cases here purely in support of the proposition that a judgment entered in the absence of an indispensable party is an absolute nullity under Louisiana law.
lifiThis case involves the improper use of an absolutely null Declaratory Judgment that was issued in the absence of an indispensable party because the party that sought the Declaratory Judgment intentionally failed to join that indispensable party. Because an absolutely null judgment cannot be used to defeat a peremptory exception of no right of action, the trial court improperly denied the DOTD’s exception on the basis of the absolutely null Declaratory Judgment. Alternatively, even if the Declaratory Judgment nullifying Ms. Hernandez’s adoption was properly issued by the trial court and is not itself an absolutely null judgment, the trial court improperly denied the DOTD’s peremptory exception of no right of action on the basis of that judgment because La. C.C.P. art. 1880 clearly provides that “no declaration shall prejudice the rights of persons not parties to the proceeding.” Thus, the Declaratory Judgment nullifying Ms. Hernandez’s adoption cannot prejudice the DOTD’s right to have Ms. Hernandez’s case dismissed on an exception of no right of-action, because the DOTD’s exception was valid at the time it was filed.
Ms. Hernandez does make an alternative argument that the Louisiana jurisprudence holding that children given in adoption are not included in the classes of persons entitled to bring a wrongful death action enumerated in La. C.C. art. 2315.1 are incorrect. See Haas, 364 So.2d 944; Nelson, 605 So.2d 681; Simmons, 342 So.2d 236; Domingue, 520 So.2d 996. In support of her argument, Ms. Hernandez cites King v. Cancienne, 316 So.2d 366 (La.1975), in which the Louisiana Supreme Court found that a good faith putative spouse may maintain a wrongful death action.
However, the instant case is clearly distinguishable from King, in which the court clearly sought to protect the rights of a person who had every reason to |1fibelieve that he was married to the decedent at the time of the events giving rise to the wrongful death action. In the instant case, Ms. Hernandez was not only aware of her adoption, but she actually participated in her adoption. The fact that Ms. Hernandez may not have been aware of the some of the consequences of her adoption, including the fact her adoption would divest her of her right to file a wrongful death action based on her natural mother’s wrongful death, does not place Ms. Hernandez in the same position as the good faith putative spouse in King. Moreover, as further explained below, our review of those cases holding that children given in adoption may not assert wrongful death actions reveals that the principle on which the DOTD based its peremptory exception of no right of action is well established and both consistent with and based on considerations of all the applicable Louisiana law.
The reciprocal rights and duties of adopter and adopted are governed by La. C.C. art. 214, which provides, in pertinent part, as follows: “the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them.” (Emphasis added.) However, children given in adoption do not inherit the right to bring a wrongful death action because the wrongful death statute, La. C.C. art. 2315.2, is part of the tort law, not a part of the succession law, meaning that the right to bring such actions does not pass to natural children given in adoption as an “inheritance right.” Simmons, *820 342 So.2d at 237. Thus, the right to bring a survival and wrongful death action arising out of the death of one’s natural parents is one of the rights of which the adopted person is divested at the time of his or her adoption. Accordingly, we grant the DOTD’s peremptory exception of no right of action and dismiss Ms. Hernandez’sJjjwrongful death action against the DOTD. Accordingly, we pretermit other issues raised by the DOTD concerning its liability to Ms. Hernandez.
LIABILITY OF THE DOTD
The DOTD also challenges the trial court’s finding that the plaintiffs met their burden of proving the DOTD’s liability for the accident in question. This court set forth the DOTD’s duty to the motoring public as regards to Bayou Road, the exact location of the accident that is the subject of the instant case, in Courteaux v. State ex rel. Department of Transportation and Development, 99-0352, 99-0353 (La.App. 4 Cir. 9/22/99), 745 So.2d 91 as follows:
At the time of this accident, the State, through DOTD, had a duty to maintain public highways such as Bayou Road, and the shoulders of such highways, in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. This duty encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. Whether DOTD breached its duty to the motoring public, by knowingly maintaining a defective or unreasonably dangerous shoulder, depends on the facts and circumstances of the case. Brown v. Louisiana Indem. Co., 97-1344, pp. 3-4 (La.3/4/98), 707 So.2d 1240, 1242.
Id. at 17, 745 So.2d at 101. Although the Courteaux accident occurred in 1994 and the accident at issue in the instant case occurred in 1998, the DOTD’s duty remained the same.
The standard of review to be applied by an appellate court considering whether a trial court’s finding that an accident was caused by the negligence of DOTD is whether that finding is clearly wrong or manifestly erroneous. Id. at 17-18, 745 So.2d at 101, setting forth the standard of review at length.
The elements of a cause of action against the DOTD based on the alleged defective condition of the highway were stated in Courteaux as follows:
|1S1. The roadway was in the custody of DOTD;
2. The roadway was defective because of a condition that created an unreasonable risk of harm;
3. The DOTD had actual or constructive notice of the risk; and
4. The defect was a cause in fact of the injuries.
Id. In his reasons for judgment in the instant case, the trial court stated, in pertinent part, as follows:
As Ms. Hendley was negotiating a curve in the highway, her vehicle encountered various disruptions on the road surface and shoulder edge. At the time of the accident, the roadway was filled with pot holes, cracks, and was uneven along the edge of the roadway. The testimony and evidence clearly established that immediately alongside the highway was a shoulder edge rut 5-8 inches in depth extending 35-40 feet in length. The Hendley vehicle entered the shoulder edge rut which caused Ms. Hendley to lose control of her vehicle. The Hendley vehicle was swerving back and forth across the two lanes of La. Hwy.300 as she exited the curve. Immediately *821 thereafter, the Hendley vehicle crashed head-on with the Bailey vehicle.
* * * * *
At trial, Louis Pomes testified as to the existence of the shoulder edge rut along the entire length of the curve in La. Hwy 300. Particularly, he noted the disturbed gravel and a black mark on the edge of the roadway within twenty (20) minutes of the accident. (Based on the reconstruction by plaintiffs experts, the Court believes this is the area where the Hendley vehicle re-entered the roadway after encountering the rut.) Mr. Pomes testified that he had heard a crash and left his house to investigate. He walked across Bayou Roadway and along the north side of the roadway edge toward the final resting place of the vehicles. During the course of his walk he observed the shoulder edge drop-off, the disturbed gravel and the black mark on the edge of the highway edge. Mr. Pomes also testified as to the condition of the roadway and the existence of the shoulder edge drop-off for a period of several years prior to the accident in question. This was corroborated by the testimony of Wallace Couture a former DOTD employee who was very familiar with the roadway in question and indicated that the shoulder edge rut existed for a period of several years prior to the 1998 accident. The plaintiff proved by a preponderance of the evidence that DOTD knew or should have known of this shoulder edge drop-off before the accident, had ample time to repair or warn of its existence, and did not do it. The plaintiff also proved that the shoulder edge drop-off is an unreasonably dangerous condition and was the proximate cause of the death of Mrs. Hendley.
hiiThus, the trial court expressly found that the plaintiffs carried their burden of proving all the elements of a claim against DOTD, finding that the DOTD had custody of the roadway, that the roadway was defective because of a condition that created an unreasonable risk of harm, that the DOTD had actual or constructive notice of the risk; and that the defect caused the plaintiffs’ injuries. At the same time, the trial court expressly found that Mr. Couture and Mr. Pomes were credible witnesses, while the witnesses presented by the DOTD were not credible.
On appeal, the DOTD sets forth a number of logical arguments related to the trial court’s recitation of the record evidence, suggesting that the trial court improperly interpreted the evidence presented. For example, the DOTD argues that the plaintiffs’ expert testimony concerning the cause of the accident was improperly based on Mr. Pomes’ testimony concerning the gravel and the black mark he saw on the roadway immediately after the accident. The DOTD notes that even Mr. Pomes admitted at trial that he could not say for certain that the black mark was a tire mark or that the mark was related to the accident in question in any way. Moreover, the DOTD points to the testimony of Jude and Arthur Bailey that Ms. Hendley’s automobile appeared to be “floating” in and out of their lane as she came out of the curve and continued toward the accident location. The DOTD suggests that a hard steering correction would have been necessary had Ms. Hend-ley’s vehicle encountered any of the “disruptions” in the roadway described by the accident reconstruction experts, and that Jude and Arthur Bailey would not have described the movement of the car as “floating.”
The DOTD’s arguments on liability in this case fail to recognize the well-established principle of Louisiana law that *822 circumstantial evidence is sufficient to support a trial court judgment. See Bear v. Pellerin Construction, Inc, 2001-0984, p. 3 (La.App. 4 Cir. 1/30/02), 806 So.2d 984, 988, writ denied, 2002-0943 (La.6/7/02), 818 So.2d 777; Airhart v. New Orleans Fire Dept., 2000-2111, p. 9 (La.App. 4 Cir. 1/23/02), 807 So.2d 1043; Nicholson v. Transit Management of Southeast Louisiana, 2000-0706, p. 5 (La.App. 4 Cir. 2/14/01), 781 So.2d 661, 668. The Louisiana Supreme Court has stated as follows:
Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Lasha [v. Olin Corp.], 625 So.2d [1002], 1005 [(La.1993) ]; Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151, 155 (1971); see also ODECO Oil & Gas Co. v. Nunez, 532 So.2d 453, 456 (La.App. 1 Cir. 1988), writ denied, 535 So.2d 745 (La.1989); Starks v. Kelly, 435 So.2d 552, 556 (La.App. 1 Cir.1983); FRANK L. MARAIST, 19 LOUISIANA CIVIL LAW TREATISE: EVIDENCE & PROOF, § 4.2 (1999). Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Wade, 33,121 (La.App. 2 Cir. 5/15/00), 758 So.2d 987. LA.CODE EVID. art. 302(4) defines an inference as “a conclusion that an evidentiary fact exists based on the establishment of a predicate fact.” Circumstantial evidence may be as persuasive as testimonial or direct evidence in providing a compelling demonstration of the existence or nonexistence of a fact at issue. Rodgers v. Food Lion, Inc., 32,856 (La.App. 2 Cir. 4/5/00), 756 So.2d 624, 628; writ denied, 00-1268 (La.6/16/00), 765 So.2d 339; Crawford v. Ryan’s Family Steak Houses, Inc, 31,911 (La.App. 2 Cir. 5/5/99), 741 So.2d 96.
Joseph v. Broussard Rice Mill, Inc., 2000-0628, p. 7-8 (La.10/30/00), 772 So.2d 94, 101.
Considering the above principles of law, our careful review of the record evidence in this case reveals no manifest error in the trial court’s finding that the plaintiffs proved the liability of the DOTD by a preponderance of the evidence. Both of the plaintiffs’ expert witnesses, Raymond Burkart and Dr. Franklin Griffith, expressly stated their opinions that the condition of the roadway was the L, cause of the accident in question. Although Mr. Pomes’ testimony concerning the black mark was one of the circumstances considered by the expert reconstruction witnesses, nothing in their testimony indicates that their opinion was hinged on the existence of the black mark or that their opinions would have changed had Mr. Pomes not testified about the black mark. In fact, all of the following conditions were identified by James R. Clary Sr., consulting civil engineer, who testified on behalf of the plaintiffs, as “hazardous conditions posed by the conditions of that roadway to a westbound motorist,” like Ms. Hendley: no edge lines, raveling of the edge of the paving, two-foot wide wheel rut trench, improper curvature with the radius getting progressively tighter, road surface itself, the line of sight approaching the curve, width of the lanes, lack of striping and marking, lack of shoulders, lack of a clear zone recovery, presence of adjacent utility poles, and an improper slope going down to the bayou on the south side.
*823 Moreover, the photographs taken immediately after the accident that were admitted into evidence in this case clearly show the existence of defects, which the trial judge referred to as “disruptions” in the surface of the roadway. Finally, we note that the term “floating,” used by Jude and Arthur Bailey, was originally suggested to Jude Bailey as an apt description for the movement of Ms. Hendley’s vehicle by one of the plaintiffs’ attorneys. When the attorney asked, “Did it look like it was floating?” Jude Bailey replied, “Possibly.” Although both Jude and Arthur Bailey did use that term after it was suggested, the word is neither a term of art nor otherwise so definitive as to exclude the possibility, as the DOTD suggests, that Ms. Hendley had been required to make a hard steering correction at some point during the time she was in the curve or immediately thereafter. Accordingly, |22we affirm the trial court judgment to the extent it imposes liability for the accident on the DOTD.
MS. HENDLEY’S COMPARATIVE NEGLIGENCE
The DOTD also challenges the trial court’s express finding that that it is “solely responsible for the accident at issue” because the “defective condition of La. Hwy. 300 was the sole and proximate cause of plaintiffs accident.” Despite the fact that the trial court expressly refused to assign any fault to Ms. Hendley and found that she “acted as a reasonable driver should,” the DOTD argues that some comparative negligence should be assigned to Ms. Hendley.
The standard of review of a trial court’s allocation of fault was stated in Courteaux, 99-0352, 99-0353, 745 So.2d 91 as follows:
By analogy to the review of awards of damages for personal injuries, the trier of fact is owed great deference in allocating fault, for the finding of percentages of fault pursuant to the comparative fault article, La. Civ.Code art. 2323, is also a factual determination. The Louisiana Supreme Court recognized the analogy between excessive or inadequate quantum determinations and excessive or inadequate fault percentage determinations. In both, the trier of fact, unlike the appellate court, has had the benefit of witnessing the entire trial and of reviewing first hand all the evidence. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), pp. 7-8, 666 So.2d 607, 610-611.
As to damages and, by analogy, apportionment of fault, the initial inquiry is whether the award for the particular injuries and their effects or apportionment of fault under the particular circumstances of the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den., 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co. Inc., 294 So.2d 803 (La.1974).
99-0352 at 13, 745 So.2d at 98-99.
The linchpin of the DOTD’s argument on this issue is the following juris-prudentially-established presumption:
When a collision occurs between two vehicles, one of which is in the wrong *824 lane of travel, there is a presumption that the driver in the wrong lane was negligent, and that the burden is on that driver to show that the collision was not caused by his or her negligence. The driver is required to exculpate himself of any fault, however slight, contributing to the accident.
Nunez v. Loomis Fargo & Co., 2000-2519, p. 3 (La.App. 4 Cir. 1/23/02), 807 So.2d 1063, 1065, quoting Simon v. Ford Motor Company, 282 So.2d 126 (La.1973) and Johnigan v. State Farm Mutual Automobile Insurance Co., 345 So.2d 1277 (La.App. 3 Cir.1977). The DOTD argues that no record evidence exculpates Ms. Hend-ley from fault for the accident giving rise to the instant case.
However, as summarized above in the section regarding the DOTD’s liability, the record evidence, including the testimony of the plaintiffs’ accident experts and other witnesses, is sufficient to rebut the jurisprudential presumption that a driver of a vehicle in the wrong lane at the time of an accident is negligent. All of the experts in this case testified that the condition of the roadway was the sole cause of the accident in question and that Ms. Hendley could not have done anything to avoid the accident with Jude and Arthur Bailey. Further, the expert opinions to that effect were supported by the other record evidence. This evidence is sufficient to rebut the presumption that Ms. Hendley was at fault in causing the accident because she was in the wrong lane of traffic when the accident occurred. Our review of the record evidence convinces us that the trial court did not abuse its | {.¿vast discretion in the allocation of fault. We therefore affirm the assignment of 100 percent of the fault for the accident to the DOTD.
DAMAGES
Finally, the DOTD challenges the trial court’s award of $125,000 in general damages to both Jude and Arthur Bailey for damages sustained as a result of the accident in question. In Fleming v. American Auto. Association, Inc., 99-1638 (La.App. 4 Cir. 6/21/00), 764 So.2d 274, the court discussed the difficulties posed by appellate review of general damage awards as follows:
The standard for appellate review of general damages awards is difficult to express, as it is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is “great” and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
In order to determine whether the general damages award shocks the conscience, the court should look to the individual circumstances of the case. In Re Medical Review Panel Bilello, 621 So.2d 6, 10 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1139. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
Id. at 9-10, 764 So.2d at 280-81.
According to the trial judge’s reasons for judgment, the physical injuries suf *825 fered by Jude and Arthur Bailey “resolved themselves within a reasonable period of time.” In fact, the evidence indicates that Jude and Arthur Bailey were both taken by ambulance to Chalmette General Hospital after the accident, where |«sthey spent the remainder of the early morning hours of February 12, 1998 undergoing x-rays and other testing. Thereafter, they were both treated at The Health Care Center in Kenner, Louisiana, by Dr. James J. Mul-vey, who did not testify at trial, for various physical injuries, as further detailed below.
Jude Bailey testified at trial that his physical injuries consisted of injuries to his chin, ribs, hand and tongue. The Chal-mette General Hospital Emergency Department Report for Jude Bailey lists a diagnosis of mild right anterior wall contusion; the radiology report indicates that he had no spinal injuries. Jude Bailey was treated for his injuries at The Health Care Center in Kenner, Louisiana, on eight occasions commencing on the day after the accident, February 12, 1998, and continuing until April 2, 1998. A report from Dr. Mulvey based on his February 12, 1998, examination of Jude Bailey lists the following “Clinical Impressions” of Jude Bailey’s injuries: (1) “Contusions of right hand, right knee, right chest wall and left jaw”; and (2) “Tongue lacerations.” That report indicated Dr. Mulvey’s intent to treat Jude Bailey with therapy sessions consisting of moist heat and ultrasound to the afflicted regions. He was also given prescriptions for Vicodin ES and Motrin 800 mg. Dr. Mulvey’s later reports concerning Jude Bailey’s physical injuries indicates that they were resolved by his last visit on April 2, 1998, some seven weeks after the accident. Adding together the ambulance charges, the Chalmette General Hospital charges, and The Health Care Center charges, Jude Bailey was awarded special damages for physical medical care totaling $1,828.25. As the DOTD did not appeal special damages, that award is final.
Arthur Bailey testified at trial that his physical injuries consisted of injuries to his right hand, forehead, chin, and left knee. The Chalmette General Hospital | ^Emergency Department Report for Arthur Bailey lists a diagnosis of a laceration [5] and multiple abrasions; the radiology report indicates that he had no spinal injuries. Arthur Bailey was treated for his injuries at The Health Care Center on eight occasions commencing on the day after the accident, February 12, 1998, and continuing until May 28, 1998. A report from Dr. James J. Mulvey at The Health Care Center, based on his February 12, 1998 examination of Arthur Bailey, lists the following “Clinical Impressions” of Arthur Bailey’s injuries: (1) “Cervical strain”; (2) “Right knee contusion”; (3) “Chest wall contusion”; and (4) “Facial abrasion.” That further report indicated Dr. Mulvey’s intent to treat Jude Bailey with therapy sessions consisting of moist heat, electromuscular stimulation, and ultrasound to the afflicted regions. Arthur Bailey was also given an intramuscular injection of Celestrone, and prescriptions for Vicodin ES, Motrin 800 mg., and Me-drol Dosepack. Dr. Mulvey’s later reports concerning Arthur Bailey’s physical injuries indicates that they were resolved by his last visit on May 28, 1998, some 15 weeks after the accident. Adding together the ambulance charges, the Chalmette General Hospital charges, and The Health Care Center charges, Arthur Bailey was awarded special damages for physical medical care totaling $1,715. As the *826 DOTD did not appeal special damages, that award is final.
Psychological injuries
The Baileys also claim that they suffered psychological injuries as a result of the February 12, 1998 accident. In its reasons for judgment, the trial court described those injuries as follows:
| ¡>7Both Mr. Baileys described what occurred to be a near death experience resulting in psychological injuries. As a result Dr. Carmen Palazzo testified that both Mr. Baileys suffered with severe symptoms of post traumatic stress syndrome. With Jude Bailey maintaining symptoms of nightmares, anxiety and panic attacks, [sic] Mr. Arthur Bailey maintained symptoms of racing heartbeat, dizziness, anxiety and panic attacks. As a result of the accident at hand, the Baileys moved from the area of which the accident had occurred at an area west off Bayou Road. Furthermore, both parties have been unable to proceed down Bayou Road at the accident site. The symptoms were exacerbated during the initial trial of June 1999, upon viewing the photos, and the testimony substantiated that symptoms exist to date.
The DOTD’s argument that the $125,000 general damage award to Jude and Arthur Bailey is excessive is focused primarily on a fact not mentioned in the trial court’s findings, but clear from the record. As the DOTD notes, despite the fact that both Jude and Arthur Bailey testified to the various psychological symptoms enumerated above, they failed to consult with any mental health professional until after the original trial in this matter, more than eighteen months after the accident. Further, the record evidence reveals that Jude and Arthur Bailey actually consulted with Dr. Palazzo only one time, on August 16, 1999. Thus, Dr. Palazzo’s opinion that both Jude and Arthur Bailey exhibited some of the symptoms of post-traumatic stress syndrome was based on a single 45-minute joint visit with Jude and Arthur Bailey and the results of some psychological testing administered by someone else during two other sessions.
Further, Jude and Arthur Bailey both testified at trial that they did not intend to seek further psychological counseling because they do not think they needed it. They both stated their beliefs that only “crazy” people seek help from mental health professionals, and each asserted that he was not “crazy.” In fact, both Jude and Arthur Bailey stated that they were handling their problems on their own. Their attorney asserts that they are simply too “macho” to see a mental health | ^professional and that this court should nevertheless affirm the trial court’s $125,000 general damage award.
In Carter v. Cox Cable, New Orleans, 2000-1934 (La.App. 4 Cir. 12/12/01), 806 So.2d 24, this court applied the same standard stated above to determine the propriety of a general damages award and expressed the difficulties that arise when a plaintiff claims entitlement to general damages for injuries, yet fails to seek medical care for those injuries. One clear distinction between the Carter case and the instant case is that Ms. Carter’s injuries were purely physical injuries, whereas we are dealing here with a general damage award for both minor physical injuries and psychological damages. The fact that some psychological injuries are involved further complicates the general damage issue in this case, even beyond the complications noted in the Carter case.
Following our close review of all of the individual circumstances of the instant case, we find that the trial judge abused its vast discretion in awarding Jude *827 and Arthur Bailey $125,000 general damages each because the awards are “beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances.” Id. at 10, 806 So.2d at 31. Moreover, the general damage awards in the instant case are so high in proportion to the injuries suffered by Jude and Arthur Bailey as to' shock the conscious. Id. Once an appellate court has made the finding that the lower court abused its much discretion in making its award, the appellate court may then disturb the award, but “only to the extent of raising it or lowering it to the lowest or highest point which is reasonably within the discretion of the trial court.” Hardy v. Poydras Properties, 97-2547, 98-0544 (La.App. 4 Cir. 1/13/99), 737 So.2d 793, 798, quoting Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
| gflIn order to determine the highest amount reasonably within the discretion of the trial court in the instant case, we have considered the general damage awards in other recent cases. Although we were unable to find any cases involving facts exactly like the facts in the instant case, we have discovered eases involving minor physical damages and psychological damages caused by the fact that the plaintiffs were involved in accidents as a result of which someone else died or was seriously injured. For example, in Lewis v. State, DOTD, 25,961 (La.App. 2 Cir. 8/17/94), 642 So.2d 260, the court awarded only $1,000 each in general damages to two minors who suffered minor physical injuries when the family car in which they were riding was involved in a collision with a tree, but also suffered psychological injuries because they saw their mother seriously injured. In Stokes v. Stewart, 99-0878 (La.App. 1 Cir. 12/22/00), 774 So.2d 1215, the court awarded $10,000 in general damages to a plaintiff who suffered a five-month back sprain as a result of an automobile accident, but also suffered mental and emotional injuries arising from the fact that he witnessed the death of the defendant driver. Finally, in Dickerson v. Lafferty, 32,658 (La.App. 2 Cir. 1/26/00), 750 So.2d 432, the court awarded $15,000 in general damages to a seven-year-old plaintiff who escaped an automobile accident with minor injuries, but also suffered psychological injuries because he witnessed his grandmother’s serious injuries from which she died later that day.
The fact in the instant case are clearly more similar to the facts in Stokes than the facts in Dickerson, because the person who died as a result of the accident was not a close relative, but simply the driver of the other vehicle that caused the accident. However, Jude and Arthur Bailey also claim that they were placed in fear for their own lives for some hours following the accident. Moreover, we are Unaware that innocent accident victims who witness the death of the other driver have undergone a seriously traumatic event that might be expected to cause a normal person to sustain emotional injures.
Nevertheless, because of the nebulous nature of psychological injuries, persons suffering such injuries must offer proper documentation and medical proof of their damages. In the instant case, the documentation of the psychological injuries suffered by Jude and Arthur Bailey is scant and the evidence that exists indicates that their physical injuries were neither serious nor severe. Thus, we find that the highest amount reasonably within the discretion of the trial court in the instant case is $15,000 each to Jude and Arthur Bailey for their psychological injuries. To that amount, we add $7,500 to Jude Bailey’s award as general damages for his minor physical injuries that were resolved within *828 seven weeks of the accident, for a total general damages award of $22,500 to Jude Bailey. To the $15,000 general damage award for psychological injuries for Arthur Bailey, we add $10,000 for his minor physical injures that were resolved within 15 weeks of the accident, for a total general damages award of $25,000 to Arthur Bailey.
CONCLUSION
Accordingly, the trial court judgment denying DOTD’s exception of no right of action to Ms. Hernandez’s wrongful death action is hereby reversed, the exception is granted, and Ms. Hernandez’s action is dismissed. We amend the trial court judgment to reduce the general damages awarded Jude Bailey to $22,500, and to reduce the general damages awarded Arthur Bailey to $25,000. In all other ■J^respects the trial court judgment is affirmed. Each party is to bear their owns costs for this appeal.
REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART AS AMENDED.
ARMSTRONG, J., concurs in the result.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, Judge JAMES F. MCKAY, III, Judge DENNIS R. BAGNERIS, Sr., Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.[1]

. Bayou Road is also known as Louisiana Highway 300.

. The caption on the DOTD’s pleading is "Exception of No Cause and/or No Right of Action.” However our review of the pleading, including the arguments supporting the exception, reveals that it is a peremptory exception of no right of action because it raises the question of "whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.” Wirthman-Tag Construction Co., L.L.C. v. Hotard, 2000-2298, p. 2 (La.App. 4 Cir. 12/19/01), 804 So.2d 856, 859.

. We note that a trial or appellate court can notice a peremptory exception of no right of action on its own motion. Wirthman-Tag Construction Co., L.L.C. v. Hotard, 2000-2298, 2000-2299, p. 3 (La.App. 4 Cir. 12/19/01), 804 So.2d 856, 859, citing Teachers’ Retirement System v. Louisiana State Employee’s Retirement System, 456 So.2d 594 (La.1984).

. We pretermit the issue of whether the Declaratory Judgment at issue in this case was obtained by actionable fraud and ill practice, rendering it a relative nullity pursuant to La. .C.C.P. art.2004, because it is an absolute nullity. However, a strong argument exists that the enforcement of the Declaratory Judgment in this case would be unconscionable and inequitable. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983).

. The location of the laceration on Arthur Bailey's body is illegible in the hospital record.