891 So.2d 98 (2004)
SUCCESSION OF Michael VICKERS.
No. 2004-CA-0887.
Court of Appeal of Louisiana, Fourth Circuit.
December 22, 2004.
Rehearing Denied January 14, 2005.
*99 Charles C. Foti, Jr., Attorney General, E. Wade Shows, Ronnie J. Berthelot, Carlos A. Romanach, Special Assistant Attorneys General, Baton Rouge, LA, for Appellant.
John R. Morello, The Morello Law Firm, Mandeville, LA, for Appellee.
*100 (Court Composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.).
MAX N. TOBIAS, JR., Judge.
On 22 July 2000, Michael Vickers ("Vickers") was fatally injured in a single-car automobile accident in Iberville Parish, Louisiana. At the time of the accident, Vickers' nephew, James Lee, Jr., was a passenger in Vickers' automobile and sustained grave injuries that rendered him a quadriplegic. Vickers subsequently died on 10 August 2000 as a result of his injuries.
On 9 July 2001, Wallace DeGennaro ("DeGennaro"), Vickers' brother, filed a petition to be appointed the administrator of Vickers' estate in the 34th Judicial District Court for the Parish of St. Bernard. That same day, the court ordered that DeGennaro be appointed the administrator of Vickers' succession ("the succession") and letters of administration were issued to him. The petition filed by DeGennaro alleged that at the time of his death, Vickers was domiciled in St. Bernard Parish.
The next day, on 10 July 2001, Glenda Lee (Vickers' sister) and James Lee, Sr., James Lee, Jr.'s parents, filed suit in the 34th Judicial District Court against the State of Louisiana through the Department of Transportation and Development ("DOTD") and the Succession of Michael Vickers, through its executor, for injuries sustained by their son in the accident.[1] DOTD filed an answer to the petition for damages on 7 September 2001, but did not file an exception of improper venue in that proceeding.
On 27 January 2004, DOTD filed a "petition to annul the appointment of the administrator and to dismiss all proceedings pertaining to the succession." DOTD asserted in its petition that Vickers was domiciled in East Baton Rouge Parish at the time of the accident. They also asserted that as Vickers was not a domiciliary of St. Bernard Parish, venue for the succession proceedings would not be proper in St. Bernard Parish, rendering it a legal nullity. Likewise, because venue for the tort suit was predicated on the inclusion of the succession as a defendant, it also was filed in a parish of improper venue.[2] In support of its position, DOTD asserted that Vickers was a domiciliary of East Baton Rouge Parish at the time of his death and that he was living and employed in East Baton Rouge Parish and had enrolled his children in school in Baton Rouge. DOTD further argued that because a succession opened in an improper venue is a legal nullity, it could be collaterally attacked as a matter of law. DOTD submitted that because the succession was opened in a parish of improper venue, the tort suit was filed in an improper venue; thus DOTD has been subjected to suit in an improper venue, in abrogation of its due process rights.
The succession responded with an exception of no right of action to DOTD's petition on 28 January 2004. The succession countered that DOTD had no standing or legal capacity to dismiss or in any way affect the succession. Further, the succession *101 maintained that DOTD could not demonstrate any deprivation of due process rights by having to litigate the tort suit in St. Bernard Parish. The succession noted that when the petition to annul was filed by DOTD, the tort suit had been pending in St. Bernard Parish for over two years; further, the succession noted DOTD's failure to file an exception of improper venue in the tort suit where the issue could have been addressed by the trial court.
On 19 February 2004, the trial court tried both the succession's exception of no right of action and DOTD's petition to dismiss and annul. At the hearing, several fact witnesses appeared and gave testimony relating to the question of Vickers' domicile. Vivian Landry ("Landry"), Vickers' former landlord in Baton Rouge, testified that Vickers rented one-half of a duplex from her beginning on 1 June 2000. She identified Vickers by his drivers' license, and testified that he told her that he wanted to rent her apartment because it was a larger apartment than another one he had been renting in Baton Rouge and that he needed the room for his children. She identified the rental application that Vickers completed and noted that the only previous address listed by Vickers was the address of a prior apartment he had rented in Baton Rouge.
Ronald Naquin ("Naquin"), president of Air Compressor Energy Systems, Inc. ("Air Compressor"), located in Baton Rouge, testified regarding Vickers' employment with his company. Naquin testified that Vickers worked for Air Compressor under a work release program in late 1998 and early 1999 while he was incarcerated. He testified that he offered Vickers continued employment after the work release program and his incarceration ended, but that Vickers declined and returned instead to St. Bernard Parish. Naquin later employed Vickers beginning in November 1999. The federal and Louisiana tax withholding forms for Vickers' term of employment with Air Compressor beginning in 1999 show Vickers' address as 14911 Central Woods, Baton Rouge, Louisiana.[3] Vickers' W-2 wage statements for 1998, 1999, and 2000, however, were mailed to 1413 Green Avenue, St. Bernard, Louisiana. Naquin did not testify regarding Vickers' intent to stay in Baton Rouge.
Glenda Lee testified that she and Vickers were from St. Bernard Parish and that after his father died she raised Vickers until he was about 19 years old. She further testified that Vickers was married to Tracey Taylor ("Tracey") at the time of his death; that they were married and had lived (but were not living) together in St. Bernard Parish; and that they had three children together, each of whom was born in St. Bernard Parish.[4] Ms. Lee further testified that the address of 1413 Green Avenue was a home owned by Vickers' in-laws, the Taylors, where Vickers resided under house arrest after his release from prison. She testified that he remained at the Green Avenue address until his house arrest term expired, a period of a few months. Vickers then took another apartment in St. Bernard Parish, where he resided for approximately six months. During that time, Vickers worked for a construction company in the New Orleans area. Because he did not have an automobile, Ms. Lee drove Vickers to and from work every day. According to Ms. Lee, Vickers was given a vehicle *102 by his in-laws and apparently decided to accept a job with Air Compressor in Baton Rouge to make a higher wage, so that he could purchase a more reliable automobile. She further testified that Vickers was living with Evelyn Schwartz and her son in Baton Rouge, as well as with his three children from his marriage.[5]
Ms. Lee testified that, following his move to Baton Rouge, Vickers kept a room and many personal belongings at 1413 Green Avenue. She further testified that Vickers returned home to St. Bernard from Baton Rouge almost every other weekend and that she frequently visited him and his children. She testified that Vickers "was coming home" and that his home was in St. Bernard Parish. She further testified that after her son finished the summer working for Air Compressor in 2000, he was coming back to St. Bernard Parish to begin the school year and that Vickers planned to return to St. Bernard Parish with him.
Stacy Taylor ("Stacy"), Vickers' sister-in-law, testified on behalf of the succession. Stacy, who is married to Tracey's brother, testified that she still lives at 1413 Green Avenue and has legal custody of Vickers' children. She testified that she had cared for the children on and off for around ten years, assuming responsibility for the children after Vickers was incarcerated and their mother, Tracey, abandoned the children with Tracey's father. According to Stacy, Vickers had inquired into the feasibility of enrolling his children in school in St. Bernard Parish in the fall[6] and told her he had hoped to make enough money in Baton Rouge to purchase a house that was for sale on the same block as 1413 Green Avenue. She also testified that she still received mail for Vickers in St. Bernard while he resided in Baton Rouge; this mail included Vickers' income tax refund for the tax year 1999 and correspondence from his parole officer. On cross-examination, Stacy admitted that none of the bills pertaining to 1413 Green Avenue were in Vickers' name and that she did not know if Vickers had actually saved any money to put towards a house in St. Bernard Parish. She characterized his residence in Baton Rouge as "temporary."
Following the hearing, the trial court signed a judgment on 17 March 2004, finding that DOTD had no interest in the succession proceedings and that
even if DOTD had standing to attack the proceeding, the Court finds that the decedent had not clearly shown an intent to change domicile from St. Bernard to East Baton Rouge.
DOTD suspensively appealed the trial court's judgment, asserting that the trial court erred in sustaining the exception of no right of action, insofar as
DeGennaro sought to be appointed as succession administrator in St. Bernard Parish, a parish of improper venue, in order to permit his family to sue him, in his representative capacity, DOTD and other non-residents of St. Bernard Parish in a subsequently filed suit in the 34th Judicial District Court in St. Bernard Parish.
DOTD further attacks the judgment of the trial court on the grounds that the evidence presented to the trial court preponderated to show that Vickers had changed *103 his domicile from St. Bernard Parish to East Baton Rouge Parish.
We address DOTD's assignments of error in reverse order. Thus, we first, we consider the assignment of error that attacks the factual findings of the trial court.
A court of appeal may only set aside a finding of fact by a trial court if, after a review of the evidence in the record on appeal, the finding is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993). In evaluating a trial court's factual findings, an appellate court must determine whether the trial court's findings are (1) unsupported by any reasonable factual basis and (2) clearly wrong. Id.
In Russell v. Goldsby, 2000-2595 (La.9/22/00), 780 So.2d 1048, the Louisiana Supreme Court discussed the legal test to determining whether there has been a change in domicile.
A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain. The question of domicile is one of intention as well as fact, and where it appears domicile has been acquired in another place, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed by positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile.
Id., p. 4, 780 So.2d at 1051 [internal citations omitted]. Thus, absent a clear declaration by an individual to change his/her domicile, the court must look to circumstantial evidence to determine whether the person seeking to challenge the change of domicile has successfully rebutted the presumption that the individual has not changed his/her domicile.
Both sides to this litigation furnished evidence to the court that could support domicile in either parish, including documentary evidence and live testimony from fact witnesses. DOTD stresses the following facts in support of its argument that Vickers changed his domicile: he leased an apartment in East Baton Rouge Parish; he placed his children in school in East Baton Rouge Parish; he was employed in East Baton Rouge Parish; and "every" document he signed after 1 October 1999 shows his residence address as an apartment in East Baton Rouge Parish.[7]
The trial court had not only documentary evidence to examine in reaching its findings on whether there was a change in domicile; it also received testimony from fact witnesses and had to judge the credibility of those witnesses in reaching its decision. It is axiomatic that a great deal of deference is given to a trial court's findings of fact, especially when those findings are "based on determinations regarding the credibility of witnesses." Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989), citing, Canter v. Koehring, 283 So.2d 716, 724 (La.1973) [additional citations omitted]. The trial court obviously placed credence in the testimony given by all witnesses at trial. However, while the testimony of Landry and Naquin may bolster the contention that Vickers' changed his domicile *104 to East Baton Rouge Parish, neither Landry nor Naquin could testify to Vickers' intent regarding his plans for the future. However, the testimony given at trial by Vickers' family members more clearly suggests that Vickers maintained a residence in St. Bernard Parish, intending to return to St. Bernard Parish and continue raising his family there. The St. Bernard Parish residence was, therefore, also Vickers' domicile, because no clear evidence was presented that Vickers ever intended to change his domicile to East Baton Rouge Parish. Therefore, we do not find that the trial court committed manifest error or was clearly wrong in finding that Vickers had not changed his domicile from St. Bernard Parish to East Baton Rouge Parish at the time of his death.
We now turn to DOTD's assignment of error regarding its standing to attack the succession proceeding.[8] DOTD argues that because the succession was opened in a parish of improper venue, it is a legal nullity. Because of this, the inclusion of the succession in the Lee's tort suit as a party defendant has wrongly subjected DOTD to an improper venue in which it has to defend itself. Although our finding that Vickers remained a domiciliary of St. Bernard Parish has undermined the main point of DOTD's argument, we address whether DOTD actually had legal standing to collaterally attack the succession proceedings.
At the outset, we note "the only judgments which may be collaterally attacked are those which are absolutely null because of a vice of form as provided in LSA-C.C.P. art. 2002." Succession of Schulz, 622 So.2d 693, 696 (La.App. 4 Cir. 5/27/93). We further note our decision in Hernandez v. State of Louisiana through Dept. of Transportation and Development, XXXX-XXXX (La.App. 4 Cir. 10/16/02), 841 So.2d 808, writ denied XXXX-XXXX, XXXX-XXXX (La.4/25/04), 842 So.2d 399, cited to us by DOTD in oral argument.
In Hernandez, the plaintiff ("Hernandez") filed a wrongful death action against DOTD for the death of her natural mother arising out of an automobile accident. However, after the wrongful death was filed, DOTD through discovery found that, years earlier, Hernandez had been adopted at age 18 by notarial act by her maternal aunt, an individual who had essentially raised her during her childhood. The notarial act of adoption provided that Hernandez was to have all the legal rights of an adopted child and be a forced heir of her aunt. Because under Louisiana law children "given in adoption" no longer have legal standing to bring a wrongful death action for the death of a natural parent,[9] DOTD filed the exception of no right of action.[10]
Shortly before the peremptory exception was to be tried, but before it was actually heard, Hernandez filed a petition for declaratory judgment ("petition to revoke, *105 rescind, and declare statutory adoption invalid") naming no person as a party defendant thereto. The trial court signed a judgment ex parte. At the subsequent trial of the exception, Hernandez opposed the exception on the grounds that DOTD had no right to collaterally attack the judgment that nullified the adoption; she argued the judgment legally removed the basis for DOTD's exception. The trial court agreed and overruled DOTD's exception.
On appeal by DOTD, we rejected Hernandez's argument that DOTD could not attack the declaratory judgment. La. C.C.P. article 2002 provides that a party may attack a judgment as a nullity if it fulfills one of three enumerated requirements, including if the judgment is "against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment of default has not been taken." La. C.C.P. art. 2002. Further, article 2002 provides that such a judgment may be attacked at any time. Id. Finally, any person may attack an absolutely null judgment at any time with an interest in a collateral proceeding "at any time and before any court, without resort to an action of nullity." Hernandez, XXXX-XXXX, p. 10, 841 So.2d at 816, quoting, Gleason v. Palmieri, 97-0624, 97-0625, p. 2 (La.App. 4 Cir. 12/23/97), 707 So.2d 57, 58, quoting, Ledford v. Pipes, 507 So.2d 9, 11 (La.App. 2 Cir.1987).
With regard to DOTD in the Hernandez case, we held that:
[b]ecause the DOTD is clearly a "person with interest" in the Declaratory Judgment at issue here, its collateral attack of the judgment in this court is sufficient to give this court jurisdiction to consider whether the Declaratory Judgment is an absolutely null judgment.
Hernandez, XXXX-XXXX, p. 10, 841 So.2d at 816. In reaching this conclusion, we noted the timing of the filing of the petition for damages in the tort suit, the filing of the exception of no right of action, and the filing of the declaratory judgment action without any defendant being named therein, and found that the declaratory judgment obtained by Hernandez was an absolute nullity because Hernandez failed to join anyone as a party defendant, especially, the DOTD, as an interested indispensable party to the action seeking a declaration that the adoption was a nullity. Hernandez's failure to name a party defendant in the declaratory action deprived the trial court of subject matter jurisdiction.[11]Hernandez, XXXX-XXXX, p. 13, 841 So.2d at 818.
In the case at bar, however, DOTD is attacking the validity of a judgment that is not a legal nullity by virtue of our finding that Vickers did not change his domicile before his death. We are cognizant, however, that had the succession proceeding been lodged in a parish of improper venue, it would be subject to collateral attack by DOTD pursuant to La. C.C.P. art.2002.
Because we find that the trial court was not manifestly erroneous in its determination that Vickers was a domiciliary of St. Bernard Parish at the time of his death, we affirm the judgment of the trial court with regard to the question of Vickers' domicile. With regard to the finding of the trial court that DOTD had no standing to challenge the appointment of the succession *106 administrator, we disagree; however, this legal error by the trial court is harmless error.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
LOVE, J., concurs in the result with reasons.
CANNIZZARO, J., concurs with reasons.
LOVE, J., concurring.
I concur in the results; however, I find that discussion of the DOTD's second assignment of error should be pretermitted. Because the DOTD did not have legal standing to collaterally attack the succession proceedings.
La. C.C.P. art 2972 provides that the opposition of a party to the petition for a succession proceeding shall allege the interest of the opponent in filing the opposition and the grounds for opposing the petition. To have sufficient standing in opposing a succession proceeding, the opposing party must have a justiciable interest. Namely, the party must be able to benefit from the attack. Estate of Mallet v. Mallet, 527 So.2d 30 (La.App. 3rd Cir.1988).
I find that the DOTD obtains no benefit in challenging the appointment of the Succession Administrator. Regardless of the parish of the succession, the DOTD will be required to defend the lawsuit. Therefore, whether this case proceeds to trial in St. Bernard Parish, East Baton Rouge Parish or Iberville Parish, creates no benefit for the DOTD.
CANNIZZARO, J., concurring.
I concur in the result reached by the majority. I would not, however, address the issue of whether the Department of Transportation and Development had legal standing to collaterally attack the succession proceeding. I do not find that the trial court's finding of fact regarding the domicile of Michael Vickers is clearly wrong or manifestly erroneous. Therefore, I would affirm the trial court's judgment on that basis.
NOTES
[1] The tort suit is captioned James Lee, Sr. et al. v. State of Louisiana through the DOTD, et al., 93-751. It has been represented to the court without objection that the tort suit was tried to a jury from 29 March 2004 to 14 April 2004. However, nothing in the record formally before us indicates the status of the tort suit.
[2] The accident that is the subject of the Lee's lawsuit did not occur in St. Bernard Parish and no other defendant to the suit was domiciled in St. Bernard Parish; therefore, the only basis for venue in St. Bernard Parish was the naming of the succession as a defendant to the suit. La. C.C.P. art. 42.
[3] The withholding forms introduced in evidence do not reflect the earlier period of employment with Air Compressor.
[4] It appears that Vickers' marriage was never legally terminated; however, it is undisputed that the two had not been living together since his incarceration and that Vickers filed for divorce in 1998.
[5] The record reflects that Vickers was the father of Evelyn Schwartz's son. Although it has been established that Evelyn Schwartz was living with Vickers and his children in Baton Rouge, she did not testify in this case.
[6] Although it is not specified in her testimony, we understand within the context of her testimony that she was referring to the fall of 2000.
[7] We note that the accuracy of this statement cannot be verified; however, we do note that every document executed by Vickers after 1 October 1999 that was placed into evidence did reference an address in Baton Rouge.
[8] We do note, however, that our decision regarding the domicile of Vickers has substantially mooted the remaining assignment of error.
[9] See Nelson v. Burkeen Construction Co., 605 So.2d 681 (La.App. 2 Cir.1992), citing, Haas v. Baton Rouge General Hospital, 364 So.2d 944 (La.1978); Simmons v. Brooks, 342 So.2d 236 (La.App. 4 Cir.1977); and Domingue v. Carencro Nursing Home, Inc., 520 So.2d 996 (La.App. 3 Cir.1987).
[10] An exception of no right of action can be filed by a party at any time or may be noted by a trial or appellate court on its own motion. La. C.C.P. art. 927 B. In contrast, the exception improper venue is waived once a party files an answer to the plaintiff's petition in a court of improper venue. La. C.C.P. art. 925 C.
[11] This failure was exacerbated by the fact that insofar as the tort suit had been filed against DOTD and was pending at the time the declaratory judgment action was filed, she could not credibly assert that she was unaware that DOTD had any interest in the action. Id.