STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-67


SUCCESSION OF JOHN ALBERT JANUARY, SR.,
AND LAURA GUILLORY AND JIMMY JANUARY

VERSUS

JOHN ALBERT JANUARY, JR.



**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 300-3662
HONORABLE PENELOPE RICHARD, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Phyllis M. Keaty,
Judges.


AFFIRMED.

**Jonathan W. Brown**
**Wilford D. Carter L.L.C.**
**1025 Mill Street**
**Lake Charles, Louisiana  70601**
**(337) 564-6990**
**Counsel for Plaintiffs/Appellants:**
      **Laura Guillory**
      **Jimmy January**
      **Pamela Sue January**
      **Lynn Donald January**

**Van C. Seneca**
**Van C. Seneca L.L.C.**
**Post Office Drawer 3747**
**Lake Charles, Louisiana  70602**
**(337) 439-1233**
**Counsel for Defendant/Appellee:**
      **John Albert January, Jr.**

**M. Keith Prudhomme**
**Mudd & Bruchhaus L.L.C.**
**410 East College Street**
**Lake Charles, Louisiana  70602**
**(337) 562-2327**
**Counsel for Defendant/Appellee:**
      **John Albert January, Jr.**

**KEATY, Judge.**

Plaintiffs, Laura Guillory (Laura), Jimmy January (Jimmy), Pamela Sue January (Pamela), and Lynn Donald January (Lynn), appeal the trial court's judgment dismissing their Petition to Annul Judgment in favor of Defendant, John Albert January, Jr. (January, Jr.), arising out of their deceased's father's succession proceeding.[1] For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

The issue in this succession proceeding is whether the decedent, John Albert January, Sr. (January, Sr.), was domiciled in Cameron or Calcasieu Parish, Louisiana, at the time of his death. When the decedent died testate on December 26, 2011, he had five children, including: January, Jr., Laura, Jimmy, Pamela, and Lynn. In his will dated February 25, 2003, the decedent named January, Jr. as his sole legatee. On February 24, 2012, January, Jr. filed both a Petition for Probate of Statutory Testament and a Petition for Possession in the Cameron Parish trial court. On February 27, 2012, a Judgment of Possession in favor of January, Jr. was signed by the trial court.

On July 17, 2013, Plaintiffs filed a Petition to Set Aside Judgment, Nulify [sic] Will and Recognize New Will, based upon another will allegedly executed by the decedent on May 18, 2006. Following trial on June 16, 2014, the trial court dismissed Plaintiffs' petition, holding that the February 25, 2003 will remained valid as they failed to meet their burden of proving that it was revoked in favor of the May 18, 2006 will. The trial court's oral ruling was memorialized in its

---

[1] Although the preface to the Petition to Annul Judgment states that "Pamala [sic] January, Laura Guillory, Lynn Donald January and Jimmy January" represent to the trial court, the prayer to the Petition to Annul Judgment states that only the "petitioners, Laura Guillory and Jimmy January, pray for judgment . . . declaring the judgments previously entered . . . be null[.]" For clarity, we will refer to all individuals collectively as "Plaintiffs."

June 23, 2014 written Judgment wherein Plaintiffs' petition was dismissed with prejudice.

On September 4, 2014, Plaintiffs filed a Petition to Annul the June 23, 2014 Judgment. They alleged that since the decedent was domiciled in Calcasieu Parish rather than Cameron Parish at the time of his death, the Judgment was null and void since it was obtained in an improper venue, i.e., Cameron Parish. Plaintiffs alleged that venue cannot be waived when opening a succession.

On October 3, 2014, January, Jr.'s counsel, M. Keith Prudhomme, filed an Amended Petition for Possession "to clarify that the decedent, [January, Sr.,] was actually domiciled in Cameron Parish at the time of his death."[2] The amended petition stated that the original Petition for Possession "inadvertently stated that [January, Sr.] was domiciled in Lake Charles, Calcasieu Parish." An Amended and Restated Affidavit of Death Domicile and Heirship was attached to the Amended Petition for Possession. Following trial on October 8, 2014, the trial court dismissed with prejudice Plaintiffs' Petition to Annul upon its recognition that the decedent was domiciled in Cameron Parish at the time of his death such that it was the proper venue for the succession proceeding. Its holding was memorialized in its written Judgment signed on October 13, 2014, which Plaintiffs appealed.

On appeal, Plaintiffs assert the following assignments of error:

1.      The trial court erred in finding that the petitioners in the Petition for Nullity had a burden of proving [that] January[,] Sr.[,] was not domiciled in Cameron Parish.

_____

[2] According to the record, M. Keith Prudhomme was January, Jr.'s counsel who represented him during the filing of the succession pleadings in the Cameron Parish trial court. Prudhomme filed a Motion to Substitute Counsel on April 2, 2014, substituting Van C. Seneca as counsel of record. Seneca is also January, Jr.'s appellate counsel in the instant matter.

2

2. The trial court erred in its finding that the original affidavits of Death and Jurisdiction and Relationship stating that the decedent was domiciled in Calcasieu Parish was simply a clerical error.

3. The trial court erred in finding that the Amended and Reinstated Affidavit of Death and Domicile and Heirship was the proper method of correcting the prior affidavits in order to have the same effective date.

4. The trial court erred in its finding that the decedent was domiciled in Cameron Parish at the time of his death.

## STANDARD OF REVIEW

The standard of review applicable to the instant matter is as follows:

A court of appeal may not set aside a trial court's finding of fact in the absence of "'manifest error' or unless it is 'clearly wrong.'" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Under the manifest error-clearly wrong standard, this court employs a two-part test for the reversal of a factfinder's determinations. *Stobart v. State Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). First, this court "must find from the record that a reasonable factual basis does not exist for the finding of the trial court." *Id*. at 882. Second, this court must "determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Id*. This test requires this court to review the record in its entirety to determine manifest error. *Id*. This court's determination is not whether the factfinder was correct, but whether the factfinder's conclusion was reasonable. *Id*.

*Lemaire v. Richard*, 13-581, p. 8 (La.App. 3 Cir. 11/6/13), 125 So.3d 558, 564.

## DISCUSSION

I. **First Assignment of Error**

In their first assignment of error, Plaintiffs contend that the trial court erred in finding that they had the burden of proving, in their Petition for Nullity, that the decedent was not domiciled in Cameron Parish.

In its oral ruling and written Judgment, the trial court found that the decedent was domiciled in Cameron Parish at the time of his death and held that "the petitioners have not met their burden of proof to prove otherwise. So I'm going to overrule your petition to annul the judgment of possession." The trial

3

court, therefore, made a factual finding regarding the decedent's domicile which can only be reversed if it is clearly wrong or manifestly erroneous. *In re Succession of Vickers*, 04-887 (La.App. 4 Cir. 12/22/04), 891 So.2d 98, *writ denied*, 05-378 (La. 4/8/05), 899 So.2d 10.

"The domicile of a natural person is the place of his habitual residence." La.Civ.Code art. 38. "A natural person may reside in several places but may not have more than one domicile." La.Civ.Code art. 39. A change of domicile occurs when a person "moves his residence to another location with the intent to make that location his habitual residence." La.Civ.Code art. 44. "Proof of one's intent to establish or change domicile depends on the circumstances. A sworn declaration of intent recorded in the parishes from which and to which he intends to move may be considered as evidence of intent." La.Civ.Code art. 45.

The Louisiana Supreme Court has enunciated the following test in *Russell v. Goldsby*, 00-2595, p. 5 (La. 9/22/00), 780 So.2d 1048, 1051, to determine whether there has been a change in domicile:

> Turning to the issue of domicile first, we note it is well settled that residence and domicile are not synonymous, and a person can have several residences, but only one domicile. La.Civ.Code art. 38; *Messer* [*v. London*, 438 So.2d 546, 547 (La.1983)]; *Autin v. Terrebonne*, 612 So.2d 107 (La.App. 1st Cir.1992). A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain. The question of domicile is one of intention as well as fact, and where it appears domicile has been acquired in another place, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed by positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. *Pattan v. Fields*, 95-1936 (La.App. 1st Cir.1995), 669 So.2d 1233. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile. *Messer*, 438 So.2d at 547; *Herpin v. Boudreaux*, 98-306 (La.App. 3d Cir.3/5/98), 709 So.2d 269, *writ denied*, 98-0578 (La.3/11/98), 712 So.2d 859.

4

In the instant matter, Laura, the decedent's daughter, testified at trial that the decedent lived in Grand Chenier, located in Cameron Parish, from birth until Hurricane Rita struck the area in 2005. She testified that following Hurricane Rita which devastated the area, he moved to her house located in Lake Charles, Calcasieu Parish. He remained living there for approximately two years until he received a Federal Emergency Management Agency (FEMA) trailer which he placed in her yard. The record also contains a cash sale deed, dated September 16, 2009, wherein the decedent purchased property in Lake Charles. At trial, Laura testified that the deed contains the decedent's signature and lists his address as "P.O. Box 94[,] 2973 Grand Chenier Hwy[.], Grand Chenier, LA, 70643[.]"

The decedent's intentions regarding purchasing property in Lake Charles is explained in Frances and Charles Perry's Amended and Restated Affidavit of Death Domicile and Heirship, dated October 3, 2014, and filed by January, Jr. In their amended affidavit, the Perrys attested that in 2009, the decedent purchased a residential lot in Calcasieu Parish where he placed a mobile home because "he could not afford to comply with the elevation requirements enacted in Cameron Parish after Hurricane Rita." The Perrys also stated that the decedent told them of his desire to move his mobile home to Grand Chenier since "[h]e did not intend to establish a permanent residence in Lake Charles." They referred to their previous affidavits dated February 23, 2012, wherein they attested that the decedent was domiciled in Lake Charles when he died. The Perrys testified that when signing their previous affidavits, they were unaware that "'domicile' means residency plus the intent to make that location his habitual residence." They swore that pursuant to their amended affidavit, the decedent was domiciled in Cameron Parish when he died. In contrast, Laura testified that the decedent never intended to return to

Grand Chenier since his family lived in Lake Charles and no one would "live with him down there by himself." She testified that he applied for and obtained a homestead exemption in Calcasieu Parish.

Despite Laura's foregoing testimony showing his intent to change his domicile to Lake Charles, the majority of Laura's testimony supports a finding that the decedent's domicile was Cameron Parish. Specifically, when she was asked at trial whether she knew that the decedent obtained funds from the Road Home Program to reoccupy the property located in Grand Chenier, she responded, "[y]es, he was supposed to, but didn't."[3] She testified that he purchased a camper and placed it on his Grand Chenier property. According to the Amended and Restated Affidavit of Death Domicile and Heirship, he stayed in the camper "whenever possible." Laura also testified that the decedent was registered to vote in Cameron Parish and that he voted there after Hurricane Rita. She asserted that he would receive mail through his post office box located in Grand Chenier and that he registered his vehicles to his Grand Chenier address. She indicated that the fishing license he obtained after Hurricane Rita also listed his Grand Chenier address. Finally, Laura testified that the decedent was never going to permanently live with her.

Laura's testimony showing that the decedent did not intend to remain in Lake Charles is supported by Freddie Adam Theriot's trial testimony. Theriot testified that he was a Grand Chenier resident who knew the decedent for approximately thirty-five years. When asked whether he saw the decedent make

---

[3] The Louisiana Road Home program is a federally-funded program providing money to Louisiana residents to rebuild or sell houses severely damaged by Hurricane Rita.

his residence in Grand Chenier following Hurricane Rita, Theriot responded: "I saw he had a - - he had a camper - - [.]"

In addition to the above, the record contains seven requests for admission which were propounded to Plaintiffs, asking them to admit or deny whether the decedent did any of the following: resided in Calcasieu Parish with the intent to remain a permanent resident of Calcasieu Parish; never registered to vote in Calcasieu Parish; received his mail in Grand Chenier; was registered to vote in Cameron Parish; maintained a dwelling structure and utilities at his Grand Chenier property; maintained his mailing address as 2973 Grand Chenier Highway, Grand Chenier, LA 70643; and, used his Grand Chenier address on his vehicle registrations. At trial, January's Jr.'s counsel sought to introduce these requests for admission, stating that they were deemed admitted since Plaintiffs failed to timely answer or object. La.Code Civ.P. art. 1467. The trial court agreed and allowed the filing of the requests for admission.

In this matter, the trial court had not only documentary evidence to examine in reaching its findings on whether there was a change in domicile, it also received testimony from fact witnesses and had to judge the credibility of those witnesses in reaching its decision. The trial court's findings of fact are accorded great deference, especially when those findings are "based on determinations regarding the credibility of witnesses[.]" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). The trial court testimony suggests that the decedent maintained a residence in Cameron Parish until 2005 when Hurricane Rita destroyed it, forcing him to leave. Although he moved his residence to Lake Charles, the evidence shows that he intended to return to Grand Chenier. Specifically, the decedent placed a camper on his Grand Chenier property, was registered to vote in Cameron Parish where he

7

received his mail, registered his vehicles to his Grand Chenier address, and maintained his Grand Chenier address on his fishing license. The Grand Chenier property was, therefore, his domicile because no clear evidence was presented showing that he intended to change his domicile to Lake Charles. Therefore, we do not find that the trial court committed manifest error or was clearly wrong in finding that decedent had not changed his domicile from Cameron Parish to Calcasieu Parish.

Despite the foregoing evidence and testimony, Plaintiffs contend that the original petition was null on its face since neither it, nor its attached documents, listed the decedent's domicile as Cameron Parish, where the succession proceeding was opened. Plaintiffs allege that those documents show Calcasieu Parish as decedent's domicile. As a result, Plaintiffs contend that the Judgment of Possession signed on February 27, 2012, is an absolute nullity for want of jurisdiction along with all subsequent orders issued by the Cameron Parish trial court.

The evidence necessary to establish jurisdiction in a succession proceeding is discussed in La.Code Civ.P. art. 2821, which provides:

> The deceased's domicile at the time of his death, his ownership of property in this state, and all other facts necessary to establish the jurisdiction of the court may be evidenced by affidavits.
>
> The deceased's death, his marriage, and all other facts necessary to establish the relationship of his heirs may be evidenced either by official certificates issued by the proper public officer, or by affidavits.

In the instant matter, the Petition for Probate of Statutory Testament is silent as to the decedent's domicile at the time of his death. Attached to it were two sworn affidavits signed by the Perrys who both stated that, "[a]t the time of his

8

death he was domiciled in Lake Charles, Calcasieu Parish, Louisiana." The decedent's death certificate was also attached and stated that he died in Calcasieu Parish. Despite the foregoing, January, Jr. filed the pleadings in Cameron Parish, which is the proper jurisdiction for the reasons discussed above. Additionally, any confusion caused by the Perrys' original affidavits is clarified by the Amended and Restated Affidavit of Death Domicile and Heirship. Accordingly, the trial court was not manifestly erroneous in this regard.

## II.  Second and Third Assignments of Error

In their second assignment of error, Plaintiffs contend that the trial court erred in its finding that the Perrys' original affidavits stating that the decedent was domiciled in Calcasieu Parish was simply a clerical error. Plaintiffs allege that this error was substantive, rather than clerical, such that the date of its correction is not accorded a retroactive effect to the date it was originally filed as provided in the statute governing a notarial act of correction, La.R.S. 35:2.1(B). As such, Plaintiffs contend in their third assignment of error that the trial court erred in finding that the Perrys' amended affidavit was the proper method of correcting the prior affidavits, as the amended affidavit was actually a notarial act of correction such that it must meet the requirements provided by La.R.S. 35:2.1. Specifically, Plaintiffs allege that January, Jr.'s attorney notarized a second affidavit without mentioning the whereabouts or availability of the original notary in violation of La.R.S. 35:2.1(A)(1)(c).

In support, Plaintiffs cite *Vickers v. Vickers*, 09-280 (La.App. 3 Cir. 11/18/09), 25 So.3d 210, which discusses a notarial act of correction as defined in La.R.S. 35:2.1 providing:

A. (1) A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by any of the following:

(a) The person who was the notary or one of the notaries before whom the act was passed.

(b) The notary who actually prepared the act containing the error.

(c) In the event the person defined in Subparagraphs (a) or (b) of this Paragraph is deceased, incapacitated, or whose whereabouts are unknown, then by a Louisiana notary who has possession of the records of that person, which records contain information to support the correction.

(2) The act of correction shall be executed before two witnesses and a notary public.

B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.

C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.

D. This Section shall be in addition to other laws governing executory process.

In *Vickers*, 25 So.3d 210, the issue was whether an error which occurred by listing an incorrect owner of immovable property in a recorded collateral mortgage was substantive or clerical. If it was substantive, the date of the subsequent notarial act correcting the error would not be given a retroactive effect to the date that the collateral mortgage was originally recorded. *Id.* On the other hand, a clerical error would constitute a retroactive effect to the date of the original filing. *Id.* The trial court held that the error was substantive rather than clerical. *Id.*

10

Based upon our reading of *Vickers*, 25 So.3d 210, and the statute, January, Jr.'s attorney was not required to mention the whereabouts or availability of the original notary since La.R.S. 35:2.1(A)(1)(c) only applies to "[a] clerical error in a notarial act affecting movable or immovable property[.]" Plaintiffs have not shown how the Amended and Restated Affidavit of Death Domicile and Heirship is "a notarial act affecting movable or immovable property" such as a deed or mortgage affecting immovable property as in *Vickers*, which would warrant the application of La.R.S. 35:2.1(A)(1)(c). Thus, Plaintiffs reliance is misplaced.

Accordingly, Plaintiffs assignment of error is without merit.

## IV.   Fourth Assignment of Error

In their fourth assignment of error, Plaintiffs contend that the trial court erred in its finding that the decedent was domiciled in Cameron Parish at the time of his death. We have addressed this issue in connection with our discussion of Plaintiffs first assignment of error. For the foregoing reasons, the trial court was not manifestly erroneous.

## DECREE

The trial court's judgment dismissing Plaintiffs' Petition to Annul Judgment is affirmed. All costs of this appeal are assessed to Plaintiffs, Laura Guillory, Jimmy January, Pamela Sue January, and Lynn Donald January.

**AFFIRMED.**

11