EDWIN A. LOMBARD, Judge.
|! This appeal is from summary judgment rendered in favor of the succession decedent’s wife, Lillian Giarratano DiLeo, and against one of their daughters, Lucia D. Minvielle. After de novo review of the record in light of the applicable law and arguments of the parties, the judgment of the trial court is affirmed.

Relevant Facts and Procedural History

Carlo J. DiLeo died on April 30, 2001. On May 11, 2001, a petition for probate of the decedent’s will and judgment of possession was properly filed with all requisite documents. The will, signed by the testator on January 26, 1996, specifically provided in relevant pertinent parts:
I give and bequeath to my wife, Lillian Giarratano DiLeo, a usufruct for life over my entire estate. Said usufruct shall be over all of my property whether in this state or otherwise. I expressly grant to my spouse, as usufructuary, the right to sell, exchange, lease or otherwise dispose of all assets subject to the usufruct, whether the assets are consumable or non-consumable things. Such disposition shall not require the consent of the naked owners ... My spouse shall have the power and authority to convert any and all property which is not productive of income into income producing property and to convert any and all non-consumable property into consumable property ...
I give and bequeath to my children, Carol di Leo Bandera, Janet DiLeo Gussman, Lucia Di Leo Minvielle, Sylvia Di Leo Delsa and 12Mary Di Leo Panep-into, in equal proportions, the remainder of my estate subject to the usufruct for live in favor of my wife, Lillian Giarrata-no DiLeo ...
The term “property” in my testament means all property subject to this testa *490 ment that I now own or acquire in the future....
Any heir who fights any provision of this testament shall have their inheritance reduced to the minimum amount allowed by law at the time of my death....
The Judgment of Possession (“the initial Judgment”) signed on May 11, 2001, recognized Mrs. DiLeo as heir of the decedent with a usufruct for life and their daughters as naked owners of the decedent’s property, “subject to the usufruct for life in favor of their mother....” Included in the estate property listing was the Merrill Lynch brokerage account at issue in this appeal. Notably, however, the Judgment of Possession failed to recite Mrs. DiLeo’s explicit right under the decedent’s will to convert non-consumable property, such as the investments contained in the Merrill Lynch account, to consumable property for her use as usufructuary. Accordingly, when Mrs. DiLeo sought access to the principal balance of the Merrill Lynch account, Merrill Lynch requested that the account holders, including the naked owners (her daughters), sign documents clarifying that Mrs. DiLeo, as usufruct, had the authority to sell the securities and other assets in the account without approval of the naked owners of the account. One of the DiLeo daughters, Lucia D. Minvielle, refused to sign the proffered documents. Accordingly, Mrs. DiLeo sought to amend the initial judgment to reflect the testator’s explicit instruction that Mrs. DiLeo had full authority to convert all property into consumable property for her own use. On February 26, 2010, in a pleading entitled “Supplemental and Amending Petition for Probate and Will and For Possession,” Mrs. DiLeo requested that the initial judgment of possession be | ^supplemented and amended to reflect the critical language of the testamentary usufruct and, thus, clarify the explicit rights conveyed to her in her husband’s will. That same day, the trial court signed the Supplemental and Amending Judgment of Possession (“the Amended Judgment”) which includes the following pertinent language:
... It is expressly granted to Lillian Giarratano DiLeo the right to sell, exchange, lease or otherwise dispose of all assets subject to the usufruct, whether the assets are consumable or non-consumable things. Such disposition shall not require the consent of the naked owners. The usufruct shall not terminate upon such disposition and shall attach to the proceeds and any reinvestment thereof. Lillian Giarratano DiLeo is granted the power and authority to convert any and all property which is not productive of income into income producing property and to convert any and all non-consumable property into consumable property....
Shortly thereafter, Ms. Minvielle filed a petition to annul the Amended Judgment, arguing that it was invalid because she and her sisters were not joined as petitioners or notified that the petition had been filed. Mrs. DiLeo answered, pointing out that after Ms. Minvielle refused to sign the necessary documents to release the Merrill Lynch account, she wrote a letter to all five of her daughters, including Ms. Minv-ielle, advising them she intended to exercise the rights conferred upon her in her husband’s will. In conjunction with her answer, Mrs. DiLeo also filed a reconven-tional demand requesting that, in the event that the Amended Judgment was annulled, the succession be reopened to recognize a right of inheritance conferred on her as usufructuary in the decedent’s will. In the alternative, Mrs. DiLeo requested that the initial judgment be annulled for a vice of substance as it was drafted by William Delsa, spouse of one of the naked owners (Sylvia D. Delsa) and accorded additional rights to the naked owners not intended by *491 the decedent. As exhibits to her Answer and Reconventional Demand, Mrs. |4DiLeo submitted copies of (1) the Merrill Lynch usufruct modification agreement signed by four of the five 5 naked owners; (2) the letter dated February 20, 2010, advising all five of her daughters (and naked owners) of her intention to exercise the rights conferred upon her in their father’s will; and (3) affidavits of concurrence executed individually by Carol DiLeo Bandera, Mary DiLeo Panepinto, Janet DiLeo Gussman, and Sylvia DiLeo Delsa, declaring that the facts as stated in Mrs. DiLeo’s Answer and Reconventional Demand were true and correct and that the affiant concurs in granting to Mrs. DiLeo “all of the relief which she seeks therein.”
Subsequently, Ms. Minvielle sought summary judgment to annul the Amended Judgment and Mrs. DiLeo sought summary judgment to dismiss Ms. Minvielle’s petition to annul the Amended Judgment. After a hearing on the motions, the trial court ruled in favor of Mrs. DiLeo, denying Minvielle’s motion for summary judgment and granting Mrs. DiLeo’s motion for summary judgment.
Ms. Minvielle appeals.

Discussion

Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. art. 966(B). The initial burden of producing evidence at the hearing on the motion for summary judgment is on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Schultz v. Guoth, 10-0343, p. 4 (La.1/19/11), 57 So.3d 1002, 1006; citing Samaha v. Rau, 07-1726, p. 4 (La.2/26/08), 977 So.2d 880, 883. “At that point, the party |fiwho bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates that he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of material factual dispute mandates the granting of the motion.” Id; (citations omitted).
“A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.” Samaha v. Rau, 07-1726, pp. 3-4, 977 So.2d at 882-83.
In her motion for summary judgment, Mrs. DiLeo requests Ms. Minvielle’s petition to annul the Amended Judgment be dismissed or, alternatively, that (as requested in her reconventional demand) the succession be reopened to recognize a right of inheritance conferred on her as usufructuary in the decedent’s will. In her memorandum in support of her motion, Mrs. DiLeo points out that the express terms of her husband’s will grant her the right to exchange, lease or otherwise dispose of all assets, both consumable and non-consumable, but that the original judgment of possession drafted by her son-in-law, William J. Delsa, failed to include that pertinent language, thus leading to the request by Merrill Lynch for clarification. Further, Mrs. DiLeo points out that the judgment of possession was amended to include the pertinent language of her husband’s will only after Ms. Minvielle refused to sign the clarification document. Finally, Mrs. DiLeo asserts that Amended *492 Judgment is valid pursuant to La. Civ. Code art. 3502 because it was [¿rendered within thirty years of the opening of the succession and recognizes a right of inheritance conferred upon Mrs. DiLeo by the decedent’s will.
In support of her motion, Mrs. DiLeo resubmits the documents submitted as exhibits to her answer and reconventional demand and (1) an affidavit by Mr. Delsa stating that he prepared the original petition and pleadings filed, including the initial Judgment of Possession, and that he was married to one of the naked owners (Sylvia D. Delsa) at the time the initial petition was filed; (2) an affidavit by Mrs. DiLeo stating that she has nearly exhausted her own assets in caring for herself and needs to access the principal of the Merrill Lynch account at issue for her continued support; and (8) documents related to Mrs. DiLeo’s assets and income, including the Merrill Lynch account at issue, supporting her assertion that her assets are near exhaustion and she needs access to the Merrill Lynch account.
In her motion for summary judgment, Ms. Minvielle asserts that (1) she was a legatee under her father’s will; (2) the original petition did not “pray for the right to sell, exchange, lease or otherwise dispose of property over which Lillian G. DiLeo was granted a usufruct” and the initial judgment did not grant those rights to Mrs. DiLeo; (3) she was not petitioner in the supplemental and amended petition filed on February 26, 2011, was not notified that such a petition had been filed, and did not consent to such petition; (4) the amended petition was not verified, nor was a Rule to Show Cause conducted; and (5) she was “never notified” of the Amended Judgment rendered on February 26, 2010. Mrs. Minvielle argues that the succession could not be reopened without notice to all interested parties and that because her mother “unconditionally accepted” the original judgment of possession she should not be allowed to reopen the succession to recognize the additional rights accorded to her in Mr. DiLeo’s will.
17First, as indicated by documents submitted in support of her summary judgment, Mrs. DiLeo notified all of her daughters, including Ms. Minvielle, of her intention to exercise her rights under the decedent’s will. As indicated by the language of the will, Mr. DiLeo clearly intended for Mrs. DiLeo to have full access to all assets, even warning his children that any child “who fights any provision of this testament shall have their inheritance reduced to the minimum amount allowed by law at the time of my death.... ” The original judgment of possession, as drafted by Mrs. DiLeo’s son-in-law, failed to reflect the testator’s clearly stated intention.
Ms. Minvielle, relying on Yokum v. Van Calsem, 2007-0676 (La.App. 4 Cir.2008), 981 So.2d 725, argues, however, that the omission in the initial judgment of possession of Mrs. DiLeo’s explicit right to alienate all consumable and non-consumable property constitutes a permanent elimination of that right. Her reliance on Yokum is misplaced. In Yokum, the decedent granted a usufruct over property located at 824 Royal Street to her husband, with the “greatest freedom to act that can be given under the Louisiana Civil Code,” including the right to dispose of “noncon-sumable things” pursuant to La. Civ.Code art. 567; the judgment of possession stated only that the usufruct was for life. When the usufructuary sold the property without consent of the naked owners and at far less than the appraised value, the naked owners (the decedent’s brothers and stepson) filed a petition for a declaratory judgment and petitory action to annul and rescind the sale. The trial court granted partial summary judgment recognizing the *493 decedent’s brothers and stepson as naked owners of the property and the purchasers of the property as “usufructaries only of the property located at 824 Royal |8Street ...” This court affirmed, reasoning that because in the Act of Cash Sale the usu-fructuary conveyed “his interest as granted to him under the Judgment of Possession” and the judgment of possession granted only a usufruct for life, “the Act of Cash Sale could have only conveyed William F. van Calsem’s usufruct interest since the only interest he had in property pursuant to the judgment of possession was a usufruct interest.” 981 So.2d at 734. In dicta, this court acknowledged that, pursuant to La.Code Civ. Proc. art. 3062, a judgment of possession constitutes prima facie evidence of the right of parties to possession of the estate of the deceased and that for the reasons stated in Succession of McCarthy, 583 So.2d 140 (La.App. 1st Cir.1991), the judgment of possession in Yokum was binding. Yokum, 2007-0676, p. 8, 981 So.2d at 732.
Thus, the facts of this case are clearly distinguishable. Mrs. DiLeo seeks only to amend the judgment of possession to reflect the explicit intention of the testator. She does not, as was the case in Yokum, argue that the initial judgment of possession should be interpreted to allow conveyance of broader rights in an act of sale than those specifically granted in the judgment of possession. As acknowledged in Yokum, a judgment of possession constitutes prima facie evidence of the right of parties to possession of the estate of the deceased, La.Code. Civ. Proc. art. 3062, but as indicated by La. Civ. Code Proc. art. 3393 pertaining to the reopening of a succession, such prima facie evidence is re-buttable.
Moreover, McCarthy (referred to in Yo-kum and cited by Ms. Minvielle) is also clearly distinguishable. In that case, the issue before the First Circuit was whether the trial court abused its discretion in maintaining |9an exception of no cause of action. The judgment of possession at issue granted a surviving spouse a usu-fruct for life, even though at that time a testamentary confirmation of a legal usu-fruct generally terminated upon remarriage. The usufructuary remarried and the children (the naked owners) attempted to reopen the succession to correct the judgment to reflect that the usufruct terminated at remarriage, but the trial court found no “proper cause” existed to reopen the succession. The First Circuit affirmed, observing that the decision to reopen a succession was within the discretion of the trial court and that under circumstances where the children had unconditionally accepted a lifetime usufruct until after their mother’s remarriage, the trial court did not abuse its discretion in finding that there was no proper cause to reopen the succession.
In this case, Mr. DiLeo (the testator) granted to his wife the property and rights she seeks to make explicit in an amended judgment. Ms. Minvielle, however, refuses to accept her father’s wishes and the clear language of his will, arguing instead that the judgment of possession has primacy over the testamentary language and, as such, restricts and permanently eliminates the broader usufruct rights conveyed by testament to Mrs. DiLeo. In essence, Ms. Minvielle advocates a “gotcha” form of succession law wherein a layman, unversed in the technicalities of usufructs, is without recourse if she fails to recognize that the language of the initial judgment of possession omits rights conveyed to her by the testator and one heir refuses to acknowledge the usufructuary rights clearly delineated by the testator but not specifically delineated in the judgment of possession. This is incorrect.
*494 |10La.Code Civ. Proc. art. 8061, provides that the “judgment sending one or more petitioners into possession under a testamentary usufruct or trust automatically incorporates all of the terms of the testamentary usufruct without the necessity of stating the terms in the judgment.” La. Code Civ. Proc. art. 3061(C)[1] (emphasis added). In turn, La.Code Civ. Proc. art. 1951 provides in pertinent part that “[a] final judgment may be amended at any time, with or without notice, on its own motion or the motion of any party: (1) To alter the phraseology of the judgment, but not the substance ...” La.Code Civ. Proc. art. 1951(1). (emphasis added).
Upon de novo review in light of the applicable law, we find that because the initial judgment of possession automatically incorporates the terms of the testamentary usufruct, the amendment of a judgment of possession to reflect the specific language of the testamentary usufruct cannot be categorized as a substantive change and, therefore, the amendment of the judgment on the motion of Mrs. DiLeo without notice to Mrs. Minvielle is not improper. Accordingly, Mrs. DiLeo is entitled to summary judgment in her favor, dismissing Ms. Minvielle’s petition to annul the Amended Judgment. Finally, although “proper cause” exists to reopen the succession, it is unnecessary to do so and, therefore, any discussion of the procedural and administrative issues related to reopening a succession, see La.Code Civ. Proc. art. 3393, is pretermitted.

^Conclusion

After de novo review, the judgment of the trial court of the trial court is affirmed.
AFFIRMED.
BONIN, J., dissents with reasons.
LANDRIEU, J., concurs with reasons.
BONIN, J., dissents with reasons.
Li respectfully dissent.
Mrs. Minvielle, in my view, is entitled to demonstrate that the amended judgment of possession obtained on her mother’s ex parte petition without notice to Mrs. Minv-ielle, an indispensable party, is null for vices of form.[1] Mrs. Minvielle is indispensable because she is a general legatee of her late father’s testament, a naked *495 owner in indivisión of the property subject to her mother’s usufruct, and one of the joint petitioners with her mother on the judgment of possession which her mother sought to amend.
The majority opinion[2] at p. 494, ante, avoids the nullity issue by maintaining that by operation of La. C.C.P. art. 3061 C, the amended judgment of possession only alters the “phraseology of the [original] judgment, but not the substance.” Like the concurring opinion, I too disagree that the amendment is merely one of phraseology. The usufruct conferred by the judgment of possession and the | ¡.usufruct conferred in the amended judgment of possession are substantively different. And Mrs. Minvielle had a vested right of naked ownership subject to the usufruct conferred in the original judgment of possession, which prevents both the retroactive application of La. C.C.P. art. 3061 C to this controversy and Mrs. DiLeo’s ex parte attempt to amend the judgment of possession.
The distinction between a usufruct with the right to dispose of nonconsumables or without that right is substantive. “Usu-fruct is a real right of limited duration on the property of another.” La. Civil Code art. 535. “The features of the right vary with the nature of the things subject to it as consumables or nonconsumables.” Id. See also La. Civil Code arts. 536 (defining consumables) and 537 (defining noncon-sumables). The highlighted, and hopefully not misleadingly oversimplified, distinction between a usufructuary’s substantive right depending upon whether the things subject to the usufruct are consumables or nonconsumables is if consumable, “the usu-fructuary becomes the owner of them,” La. Civil Code art. 538, but if nonconsumable, “the usufructuary has [only] the right to possess them,” La. Civil Code art. 539. The right to dispose of a nonconsumable, see La. Civil Code art. 568, is an attribute of ownership. See La. Civil Code art. 477 A (“The owner of a thing may use, enjoy and dispose of it within the limits and under the conditions established by law.”) Thus, the right of a usufructuary of non-consumables to dispose of them is different from the ordinary right of a usufructuary. Amending the judgment of possession substantively changed Mrs. Minvielle’s naked ownership rights; Mrs. DiLeo, the usu-fructuary, would have a right to dispose of the property, including the naked interest.
Mrs. Minvielle’s naked ownership rights, however, were vested by virtue of the original judgment of possession. Mrs. DiLeo herself joined with her five daughters in petitioning the court to place them in possession of the estate. The |spetition was verified by all six petitioners. They sought execution of Mr. DiLeo’s testament, recognition of Mrs. DiLeo as surviving spouse in community entitled to one-half of the community property, recognition of Mrs. DiLeo as “the usufructuary for life over all the property of the succession,” and recognition of the five daughters as “sole heirs of the decedent and as such, that they be entitled ... to be put into possession of an undivided one-fifth (1/5) interest” in decedent’s property, “subject to the usufruct for life in favor of their mother.” Because all of the general legatees joined in the petition as well as the surviving spouse in community, and no creditor demanded an administration, the court was authorized to render and sign a judgment of possession, which it did. See La. C.C.P. arts. 3031 and 3061 A. “The judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to the de *496 ceased of the parties recognized therein, as heir, legatee, surviving spouse in community, or usufructuary, as the case may be,” provides La. C.C.P. art. 3062, “and of their right to the possession of the estate of the deceased.”
After rendition of a judgment of possession, as here, “if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be ... reopened.” La. C.C.P. 3393 B. Mrs. DiLeo did not expressly petition to reopen the succession, but she did file an ex parte petition to amend the judgment.
Because the basic purpose of reopening a succession is to deal with overlooked succession assets, the Louisiana Supreme Court surveyed the jurisprudence to determine the circumstances under which “proper cause” has been found to exist. See Succession of Villarrubia, 95-2610, p. 6 (La.9/5/96), 680 So.2d 1147, 1150. The court concluded that “other proper cause” under Article 3393 |4exists only “under extremely limited circumstances.” Id. Vil-larrubia noted that reopening had been allowed in intestate successions when a valid will is discovered. Id., pp. 6-7, 680 So.2d 1147 (citation omitted). But reopening had not been allowed for collation, to assert forced heirship rights, or for error of law. Id., p. 7, 680 So.2d 1147 (citations omitted).
As the court examined the circumstances of cases in which the issue of “other proper cause” was treated, clear precepts emerge and a recurring theme is discernable. If the party seeking to reopen the succession for “other proper cause” had accepted the succession and consented to the original judgment of possession, there was no proper cause for him to reopen the succession and he was bound by the original judgment. Villarubia, pp. 7-8, 680 So.2d at 1151.
Thus, when a son who had joined in a judgment of possession in a testate succession which did not recognize his forced heirship rights (which would have increased his share of property) sought to have such rights recognized by reopening the succession and amending the judgment, the court found no “proper cause.” Succession of Lasseigne, 488 So.2d 1303, 1306 (La.App. 3rd Cir.1986). Similarly, when grandsons were seeking to claim the forced heirship rights of their father in their grandfather’s succession, the court rejected their claim because their father “joined in the succession proceedings of his father ... and acquiesced in the manner in which the property was divided among the legatees.” Averette v. Jordan, 457 So.2d 691, 696 (La.App. 3rd Cir.1984). Thus, “his heirs are now precluded from asserting any interest in this succession on his behalf.” Id. The supporting rationale is that when “one makes a judicial declaration and judgment is rendered in accordance therewith, he cannot ordinarily revoke the declaration and attack the judgment under the pretense of having made an error of law.” Id.
The theme resonates again in a case where a sister had joined in a judgment of possession with her niece and nephew and their father, her brother, who had | ¡/‘renounced” his share in a succession in his children’s favor. See Succession of Williams, 418 So.2d 1317 (La.1982). The Supreme Court concluded that the sister’s “representations in the succession pleading that she and her niece and nephew were the sole heirs of the decedent were instrumental in obtaining judgment on that basis and had the effect of renunciation of all rights in conflict with the judgment obtained.” Id. at 1320.
*497 Then, importantly, we have a sort of reversal of our situation. The testator bequeathed a usufruct in favor of his second wife over the property inherited by his three children, but the testament did not provide that it was a lifetime usufruct. See Succession of McCarthy, 583 So.2d 140 (La.App. 1st Cir.1991). The children and their step-mother joined in a petition and judgment of possession that, however, provided for a lifetime usufruct. Id. at 142 When the step-mother remarried, the children sought to reopen the succession, claiming that her usufruct had terminated. Id. at 141. The first circuit affirmed the trial court’s sustaining of the exception of no cause of action because the children had not shown “proper cause” to reopen. Id. The court observed that “[t]he children did not seek to have the [original] judgment amended, they did not make application for new trial, they did not seek to have the judgment annulled nor did they appeal.” Id. at 142 (emphasis supplied).[3] And, the court concluded, “[t]he Judgment of Possession is final.” Id.
This brings us to the facts of Villarru-bia, in which a grandson of the decedent had consented by written act to the judgment of possession which placed his uncles, but excluded him, into possession of the grandfather’s testate estate. Villarrubia, supra. After the judgment of possession, the Louisiana Supreme Court decided the disputed constitutionality of La. Civil Code art. 1493, and the grandson attempted to have the succession reopened. Id., p. 9, 680 So.2d at 1151. The Supreme Court | firuled that the grandson “cannot now have the succession reopened to assert his rights as a forced heir.” Id., p. 11, 680 So.2d at 1152.
The Villarrubia court stated that, “We realize this ruling is harsh, but if the law allowed judgments of possession to be overturned because of error of law or change in the law, the sanctity of such judgments would be seriously impaired.” Id., p. 12, 680 So.2d at 1152 (emphasis added).
Following Villarrubia, we affirmed the trial’s finding that there was no “proper cause” to reopen a succession in the circumstance where one brother who did not join in petitioning for the judgment of possession nonetheless accepted his share based upon the judgment. See Succession of Chatelain, 00-1267, p. 4 (La.App. 4 Cir. 5/16/01), 788 So.2d 620, 622.
The second circuit rejected a wife’s effort to reopen her husband’s succession to claim her marital portion because she had joined in the petition for possession, verified her reading of the petition and the facts contained in it as true and correct, and acquiesced in the distribution of the estate. See Prine v. Prine, 34,749, p. 4 (La.App. 2 Cir. 9/17/01), 793 So.2d 561, 564. “The trial court correctly concluded that the plaintiffs participation in the succession proceedings precluded her from subsequently asserting a claim contrary to the judgment of possession.” Id.
The precepts which govern this matter from Mrs. DiLeo’s perspective emerge clearly. She herself joined in a verified petition and obtained judgment as a result of that petition. See Averette, supra. A change in law is of no avail. See Villarrubia, supra. Getting less than the law would allow is of no avail. See Williams, supra; Lasseigne, supra, and Prine, supra. Getting more than the testament would allow is of no avail. See McCarthy, supra.
|7We previously arrived at this same point in Yokum v. Van Calsem, 07-0676 *498 (La.App. 4 Cir. 3/26/08), 981 So.2d 725. There, the testamentary usufructuary attempted to sell the immovable property subject to his usufruct as described in the testament, which allowed, as here, disposition of nonconsumables, but which right of disposition was not provided in the resulting judgment of possession; we considered his claim “that he was given greater rights in the decedent’s will than what appears in the judgment of possession.” Id., p. 11, 981 So.2d at 783. We rejected that claim, finding “for the same reasons in Succession of McCarthy, that the judgment binds the parties.” Id. We then concluded that the “judgment of possession controlled the rights and obligations of the parties, specifically the naked ownership ... and the usufruct interest.” Id., p. 12, 981 So.2d at 733.
But, to the perspective of Mrs. Minv-ielle, these same precepts hold that her rights under the 2001 original judgment of possession as between her on the one hand (a general legatee, a co-naked owner in indivisión of the property subject to the mother’s usufruct, and a joint petitioner) and her mother (as the surviving spouse in community, a legatee of a usufruct under her father’s testament, and a co-petitioner) as well as her sisters (as all of the other general legatees under her father’s testament, the co-naked owners in indivisión of the property subject to the mother’s usu-fruct, and joint petitioners) were settled long before the effective date of Article 3061 C. The terms of Mrs. DiLeo’s usu-fruct set forth in the original judgment of possession superseded the terms of her usufruct provided by the testament. Mrs. Minvielle’s rights as a naked owner were only subject to her mother’s ordinary usu-fruct for life. That is, because the judgment of possession did not expressly grant to Mrs. DiLeo the right to dispose of the nonconsumables, she enjoys no such right. See La. Civil Code art. 568 (“The usufruc-tuary may not dispose of nonconsumable things unless the right to do so has been expressly granted to him.”)
|sTo retroactively apply the provisions of Article 3061 C, which was not even adopted until after the rendition of the amended judgment and thus provided no basis at the time of the amendment for the amendment, is insupportable. The original judgment was rendered on May 11, 2001. The amended judgment was rendered on February 10, 2010. Acts 2010, No. 226, which is now designated Article 3061 C, was adopted on June 17, 2010 and became effective August 15, 2010. To apply the automatic incorporation provisions of Article 3061 C to the original judgment of possession would divest Mrs. Minvielle of her vested rights acquired under that judgment. And, of course, that is not permitted.
In Succession of Lambert the Supreme Court addressed whether persons “who have taken title to succession property” relying on jurisprudential interpretations which were being overruled and answered that “[t]hey are protected under the law in effect at the time of the vesting of their interests.” 210 La. 636, 660, 28 So.2d 1, 9 (1946). “They have vested rights which cannot be disturbed.” Id. A law too cannot be applied retroactively if to do so would divest a person of a vested right and would be “in violation of the due process guarantees under the state and federal constitutions.” Lott v. Haley, 370 So.2d 521, 524 (La.1979).
Thus, in my view (as in the concurring opinion), the majority opinion mistakenly characterizes the amendment as simply one of phraseology. The amendment is one of substance.
Once we are clear that Mrs. DiLeo’s amendment was one of substance and not phraseology, there can be no serious ques *499 tion that Mrs. Minvielle was an indispensable party requiring service of process of the petition to amend, and, in the absence of such service before the rendition of the amended judgment, is entitled to successfully maintain her nullity action for vices of form. Because Mrs. Minvielle’s joinder was required to obtain the original judgment of possession without an administration of the succession, it seems elementary that her joinder in 19an action to amend the judgment is also necessary. See La. C.C.P. art. 3031 A (emphasis added) (“the court may send all of the legatees into possession of their respective legacies without an administration of the succession, on the ex parte petition of all of the general and universal legatees”) And Mrs. Minvielle is one of the general legatees. “A general legacy is a disposition by which the testator bequeaths a fraction or a certain proportion of the estate, or a fraction or certain proportion of the balance of the estate that remains after particular legacies.” La. Civil Code art. 1586. Here, I note for our discussion that our testator bequeathed to his five daughters in equal proportions, the remainder of his estate; the five daughters, including Mrs. Minvielle, are the general legatees.[4]
Additionally, and importantly, Mrs. Minvielle was a naked owner in indivisión of the nonconsumables for which Mrs. Di-Leo sought the recognition to dispose of. The relief which Mrs. DiLeo sought could not be granted in the absence of Mrs. Minvielle, a general legatee and a naked owner. “A person shall be joined as a party in the action when ... in his absence complete relief cannot be accorded among those already parties.” La. C.C.P. art. 641 A(1). Articles 641 through 646 were amended by 1995 La. Acts, No. 662, § 1. Prior to those amendments, the party described in Article 641 was referred to as an indispensable party, and there could be no adjudication unless all indispensable parties were joined in the action. See Matherne v. Guilliot, 544 So.2d 723, 725 (La. App. 3rd Cir.1989). While the latter provision no longer appears in Article 641, by using the word, “shall,” the article still makes mandatory the joinder of the person described in Article 641 as a party to the suit. See Terrebonne Parish School Bd. v. Bass Enterprises Production Co., 02-2119 (La.App. 1 Cir. 8/8/03), 852 So.2d 541.
linAnd a final judgment rendered “[ajgainst a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction” shall be annulled. La. C.C.P. art. 2002 A(2). An adjudication made, therefore, without making a person described in Article 641 a party to the litigation is an absolute nullity. See Frey v. American Quarter Horse Ass’n, 95-157 (La.App. 5 Cir. 7/25/95), 659 So.2d 849. As noted in Terrebonne, 02-2119, p. 7, 852 So.2d at 545-546, it is “axiomatic that courts are without power to adjudicate the rights of a person who is not a party to the litigation or appropriately represented.”
Notably, the judgment to be annulled for vices of form need not name the indispensable party in the judgment itself. Article 641 provides that a person shall be joined as a party in the action when he claims an interest relating , to the subject matter of the action and is so situated that the adjudication of the action in his absence may, as a practical matter, impair or impede his ability to protect that interest *500 or may leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations. Thus, as here, a judgment rendered in the absence of an indispensable party can be annulled pursuant to La. C.C.P. art. 2002 A(2). For example, in Stephenson v. Nations Credit Financial Services Corp., 98-1689 (La.App. 1 Cir. 9/24/99), 754 So.2d 1011, the owners of a dominant estate brought a declaratory judgment action to establish a public right of way and servitude of passage over a neighboring estate. The owner of the neighboring estate listed, and sold, the property prior to executing a consent judgment granting a servitude of passage to the dominant estate. After the consent judgment was executed, the purchasers filed a motion to nullify the consent judgment in the declaratory judgment action. The purchasers argued that they were indispensable parties to the declaratory judgment action and that the failure to name them constituted a vice of form under La. C.C.P. art. 2002. The trial court eventually nullified the consent judgment. On appeal, the defendants argued that |nthe trial court erred in annulling the consent judgment pursuant to La. C.C.P. art. 2002 A(2) because the purchasers were never defendants against whom judgment was taken. The Court disagreed and held that La. C.C.P. art. 2002 A(2) encompasses a failure to join indispensable parties:
We do not read LSA-C.C.P. art. 2002 A(2) as including only those persons who were named as defendants in lawsuits. To do so would leave unnamed persons who should have been joined pursuant to Article 641, but were not, without a means to attack a judgment that was rendered in the proceeding to which they were never made a party, unless they happened to learn of the judgment within the appeal delays. Therefore, because we find that the Hans should have been made defendants in the declaratory judgment action, we find that the ground for annulment of a judgment set forth in LSA-C.C.P. art. 2002 A(2) is applicable herein.
Stephenson, 98-1689, p. 12, 754 So.2d at 1019.
Similarly, in Hernandez v. State, Through Department of Transportation and Development, we considered whether DOTD was an indispensable party to a declaratory action in which the natural daughter of the decedent was seeking to set aside her adoption in order to maintain a wrongful death action against DOTD. Hernandez v. State, Through Department of Transportation and Development, 02-0162 (La.App. 4 Cir. 10/16/02), 841 So.2d 808 (on rehearing). We adopted the three-judge panel’s conclusion that “when both the existence and the claim of a person who would be affected by a declaratory judgment are evident, that person must be joined in the petition for declaratory judgment.” Id. p. 13, 841 So.2d at 818. This is comparable to our situation because Mrs. DiLeo, when all is said and done, was seeking a declaration of her rights under the testamentary usufruct.
Thus, the failure to join any indispensable party can be used as grounds to nullify a judgment. And failing to join as a defendant a general legatee and naked owner in indivisión of the property subject to the usufruct is ground to annul the so-called amended judgment of possession which was rendered in these proceedings.
|12Up to this point, I believe, the concurring opinion and my view are in accord. Where we diverge is whether the ultimate cross-motions for summary judgment satisfied the requirement of joinder of or notice and opportunity to be heard to Mrs. Minvielle. I think not.
*501 Mrs. DiLeo only sought a nullity of the original judgment of possession for vices of substance if the amended judgment was annulled. An action for nullity for vices of substance requires a different kind of proof than an action for nullity for vices of form. “A final judgment obtained by fraud or ill practices may be annulled.” La. C.C.P. art. 2004. Mrs. DiLeo’s recon-ventional demand implies that there was ill-practice on the part of the attorney who represented Mrs. DiLeo and her daughters in the original petition for possession. She alleges that the attorney is the husband of one of her daughters (not Mrs. Minvielle) and that the judgment prepared by him accords greater rights of naked ownership to his wife and her sisters than was intended by the decedent in his will.[5]
In her affidavit filed in support of her motion for summary judgment, Mrs. Di-Leo makes no mention of the ill-practice. In the unsworn attached copy of Mrs. Di-Leo’s letter to her daughters (filed without objection), Mrs. DiLeo relates that she, her lawyer son-in-law, and his wife have been trying to obtain release of the funds and that she does not require her daughter’s consent. Her son-in-law’s affidavit merely verifies that he prepared the pleadings and that he was married to the daughter at that time and is still married to her. There is not a single word of explanation about how or why the original succession pleadings were drafted and filed.
Mrs. DiLeo may have established that if the original judgment is not annulled the result to her is harsh, but it is no more harsh than to any of the other litigants who joined in the rendition of judgments of possession; she has not, | ^however, shown the original judgment to be an injustice. See Belle Pass Terminal, Inc. v. Jolin, Inc., 01-0149 (La.10/16/01), 800 So.2d 762.
I, however, am not foreclosing that Mrs. DiLeo might be able to prove the injustice at a trial of her nullity action. But in the meantime, I am certain that Mrs. Minvielle is entitled to establish that the amended judgment is null for vices of form, which seems fairly simple at this point.
Therefore, I would reverse the summary judgment and remand for a trial on the merits of the nullity action.[6] We make a mistake in not insisting upon procedural rectitude in succession proceedings. Much mischief can result from permitting a single heir or legatee the opportunity to revise judgments of possession without the consent of, or proper notice to, other heirs, legatees, and indispensable parties. While Mrs. DiLeo may at the end of the day be entitled to the modification she seeks and Mrs. Minvielle may rue the day she withheld her consent to the plain provisions of her late father’s testament, I cannot overlook the critical procedural deficiencies in Mrs. DiLeo’s actions to change the judgment of possession. I therefore respectfully dissent.
LANDRIEU, J., concurs with reasons.
hThe majority concludes that the trial court’s amendment of the judgment of possession is not substantive, and therefore was permissible under article 1951 of the Code of Civil Procedure.[1] I disagree. Although I find that the 2010 judgment af *502 fected a substantive change in the 2001 judgment, I concur in the result reached by the majority for the following reasons.
The May 11, 2001 judgment of possession is a final judgment. Louisiana Code of Civil Procedure article 1951 provides that a final judgment may be amended by the trial court at any time, with or without notice, on its own motion or that of any party “to alter the phraseology of the judgment, but not the substance; or to correct errors of calculation.” Here, the amended judgment that the trial court signed on February 26, 2010, without giving notice to all parties, altered the substance of the original judgment, not merely the phraseology. It did so by conferring upon Mrs. DiLeo rights not contained or mentioned in the original judgment of possession. That these rights were bequeathed to her by testament is not disputed; however, the relevant inquiry is whether these rights were also ^included in the 2001 judgment of possession, which clearly they were not. The trial court’s amendment of the judgment to include them was a procedurally improper remedy.
The only proper means by which Mrs. DiLeo could have attacked a judgment of possession she believed to be contrary to her husband’s will was the filing of a motion for new trial or an action for nullity.[2] However, at the time Ms. Minvielle refused to sign the documentation required to release the Merrill Lynch account, the delay for applying for a new trial had long lapsed. Therefore, the only avenue remaining to Mrs. DiLeo was the filing of an action for nullity, which she did not do. Instead, she filed a petition requesting that the judgment of possession be amended. The trial court’s ex parte signing of an amended judgment of possession the same day was in error.
After the trial court signed the amended judgment in 2010, Ms. Minvielle was faced with the same procedural remedies to seek alteration of the amended judgment that had been available to Mrs. DiLeo with regard to the original judgment. Ms. Minvielle properly filed an action to annul the amended judgment for lack of notice. Mrs. DiLeo responded by asserting a re-conventional demand requesting that, in the event the amended judgment was annulled, the succession be reopened or alternatively, the initial judgment of possession be annulled. Ms. DiLeo’s raising of the nullity issue by reconventional demand is equivalent to her asserting an action for nullity of the original judgment of possession.[3]
Thereafter, Ms. Minvielle sought summary judgment on her petition to annul the amended judgment, and Mrs. DiLeo moved for summary judgment to dismiss lsMs. Minvielle’s petition or alternatively, *503 as prayed for in her reconventional demand, to have the succession reopened and her right to the Merrill Lynch funds recognized. Therefore, when the trial court heard and decided the cross motions for summary judgment, all the pertinent issues had been raised with regard to the substance of both the original and amended judgments of possession, and all parties had been notified. Although the trial court erred by amending the original judgment of possession ex parte and in the absence of a petition to annul, the procedural posture of the case had changed materially by the time the court considered the cross motions for summary judgment that are the subject of this appeal.
In essence, what was before the court on the cross motions for summary judgment were the merits of each party’s nullity action on the respective underlying judgments. Each party had notice and an opportunity to present evidence in support of her claim. As there are no material facts in dispute regarding the testament and the rights conferred by it to Mrs. DiLeo, the trial court correctly granted Mrs. DiLeo’s motion for summary judgment and dismissed Ms. Minvielle’s action for nullity of the amended judgment of possession.
Further, I find no error in the trial court’s failure to reopen the succession. A reopening of the succession would be a waste of judicial time and resources in the instant case because all the relevant issues between the parties have been raised, the testament is clear on its face, and all property and rights conferred by the testament are resolved.
Accordingly, I respectfully concur in the majority’s affirmation of the trial court’s granting of summary judgment.

. Paragraph C of La.Code Civ. Proc. art. 3061 became effective in August 15, 2010. The legislature did not express its intent pertaining to retrospective or prospective application of Paragraph C, but it clearly is not a substantive change and therefore is applicable retroactively. See Sudwischer v. Estate of Hoffpauir, 97-0785, p. 9 (La. 12/12/97), 705 So.2d 724, 728. Because an appellate court is bound to apply the law as it exists at the time of its decision, see Jacobs v. City of Bunkie, 98-2510, (La.5/18/1999), 737 So.2d 14, 19 (even where the law has changed during pen-dency of suit, if retroactive application is permissible, new law applies on appeal), Paragraph C is determinative in the matter before us.

. Mrs. Minvielle has not sought review of the denial of her motion for summary judgment in this appeal of the final judgment granting Mrs. DiLeo's motion for summary judgment. She was entitled to seek review of the merits of the ruling of that interlocutory judgment at the same time she seeks review of the merits of the final judgment. See People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (1968). See also Roger A. Stetter, LOUISIANA CIVIL APPELLATE PROCEDURE, § 3:32 (2010-2011 ed.) ("When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings adverse to him, in addition to review of the final judgment.”) Mrs. Minvielle’s failure to assign as error the denial of her motion ordinarily prevents us from considering the merits and granting her relief therefrom. See Rule 2-12.4, Uniform Rules — Courts of Appeal. But see also La. C.C.P. arts. 2124 and 2129, and Merrill v. Greyhound Lines, Inc., 10-2827 (La.4/29/11), 60 So.3d 600.

. By custom I refer to Judge Lombard’s opinion as the majority opinion although only the result and not the reasoning commands a majority.

. I do note that Mrs. DiLeo has sought alternative relief to annul the original judgment in the event that the amended judgment was annulled.

. Because the testament contains a general legacy, "then by definition under this article there cannot also be a universal legacy. The two legacies are defined in such a way that they cannot exist in the same testament.” Revision Comments — 1997 to La. Civil Code art. 1585. Thus, there are no universal legatees under Mr. DiLeo's testament.

. Mrs. DiLeo also filed a supplemental recon-ventional demand in which she specially pleads Article 3061 C, about which enough has been set forth.

. On remand, Mrs. Minvielle could re-file her motion for summary judgment.

. The majority arrives at this conclusion by relying upon La.Code Civ. Pro. art. 3061(C), which provides that a judgment sending one into possession of a testamentary usufruct automatically incorporates all the terms of the testamentary usufruct without the necessity of stating them. I note that Paragraph C of *502 article 3061 was added by the legislature by Acts 2010, No. 226, which became effective August 15, 2010. In the instant case, however, the initial judgment of possession was signed on May 11, 2001 and was amended by the trial court on February 26, 2010, both before the effective date of the statutory amendment adding Paragraph C. I therefore believe the majority’s reliance upon this statute is misplaced.

. See La.Code Civ. Pro. arts. 1971, et seq. (motion for new trial) and 2001, et seq. (action for nullity).

. La. C.C.P. art. 1061 permits the defendant to assert by reconventional demand "any cause of action” he may have against the plaintiff and requires the defendant to assert by reconventional demand all causes of action he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action. In the instant case, therefore, Mrs. DiLeo was clearly permitted, and arguably required, to assert her action for nullity of the original judgment by reconventional demand in the instant suit.